UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

WELLS FARGO BANK, N.A., solely in its capacity as Trust Administrator of MASTR Adjustable Rate Mortgages Trust 2007-3,

    Interpleader Plaintiff,

  - against -

WALES LLC, ASSURED GUARANTY MUNICIPAL CORP. (f/k/a FINANCIAL SECURITY ASSURANCE INC.), THE DEPOSITORY TRUST COMPANY, CEDE & CO., as registered Holder of certain Certificates and nominee name of the Depository Trust Company, and DOES 1 through 100, beneficial owners of certain Certificates,

    Interpleader Defendants.

---

**AMENDED INTERPLEADER COMPLAINT**

Case No. 13 Civ. 06781 (PGG) (HP)



---

Interpleader Plaintiff Wells Fargo Bank, N.A. ("Wells Fargo"), solely in its capacity as Trust Administrator under the Pooling and Servicing Agreement for MASTR Adjustable Rate Mortgages Trust 2007-3 ("MARM 2007-3 Trust" or the "Trust"), dated as of April 1, 2007, by and among Mortgage Asset Securitization Transactions, Inc., as Depositor; UBS Real Estate Securities Inc., as Transferor; Wells Fargo, as Master Servicer, Trust Administrator, Custodian and Credit Risk Manager; and U.S. Bank National Association, as Trustee (the "PSA"),[1] alleges and states as follows:

---

[1] All capitalized terms used, but not defined, herein shall have the meanings ascribed to them in the PSA.

## INTRODUCTION

1. This is an interpleader action brought for the purpose of obtaining adjudication of the respective rights of the Interpleader Defendants with respect to certain cash held in the Distribution Account, which account was created and maintained by Wells Fargo and titled "U.S. Bank National Association in trust for registered holders of MASTR Adjustable Rate Mortgages Trust 2007-3, Mortgage Pass-Through Certificates, Series 2007-3." Wells Fargo serves, among other roles, as Trust Administrator for the Trust, a securitization trust from which investors are entitled to receive interest and/or principal proceeds in accordance with the terms of the PSA from residential mortgage loans and related assets held by the Trustee on their behalf. Wells Fargo faces conflicting demands by the Interpleader Defendants with respect to certain Trust proceeds held by it, and cannot determine, without incurring the risk of liability and litigation (and related costs), how to proceed.

## JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332, and other applicable law, because there is complete diversity of citizenship between the parties hereto, and as demonstrated below, the amount in controversy exceeds $75,000 exclusive of interest and costs.

3. Venue in this District is appropriate pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to this action occurred and/or one or more Interpleader Defendants reside in this judicial district.

## PARTIES

4.      Wells Fargo is a national banking association with its main office in Sioux Falls, South Dakota. Wells Fargo is the Master Servicer, Trust Administrator, Custodian and Credit Risk Manager under the PSA.

5.      Interpleader Defendant Wales LLC ("Wales") is, upon information and belief, a limited liability company organized under the laws of the State of Delaware, with its principal place of business in New York, NY. Further, upon information and belief, Wales is the beneficial owner of Class 1-2A1 Certificates issued by the Trust with original face amount in excess of $10,000,000.

6.      Interpleader Defendant Assured Guaranty Municipal Corp (f/k/a Financial Security Assurance Inc.) ("Assured") is, upon information and belief, a financial guaranty insurance company organized under the laws of the State of New York, with its principal place of business at 31 W. 52nd St., New York, NY. Financial Security Assurance Inc., and its successors in interest, is the Certificate Insurer under the PSA. Upon information and belief, Financial Security Assurance Inc. was acquired by Assured Guaranty Ltd. or one of its subsidiaries ("Assured Guaranty") in July 2009. Following Financial Security Assurance Inc.'s acquisition by Assured Guaranty, its name was changed to Assured Guaranty Municipal Corp., which continues to be domiciled in New York, NY.

7.      Interpleader Defendant the Depository Trust Company (the "DTC") is, upon information and belief, a limited purpose trust company organized under New York banking law, with its principal place of business at 55 Water Street, New York, NY. The DTC is a securities depository that, among other things, processes principal and interest payments by the Trust to holders of Certificates and is responsible for making any necessary credit or debit adjustments in

3

the event that distribution statements for the Trust are restated. Thus, the DTC is a necessary party in order to effect any judgment entered by the Court in this interpleader action.

8. Interpleader Defendant Cede & Co. is, upon information and belief, the nominee name of The Depository Trust Company, a limited purpose trust company organized under New York banking law, with its principal place of business at 55 Water Street, New York, NY. Cede & Co. is the registered Holder of record of the Certificates, representing 100% of the aggregate principal amount of the Notes. Upon information and belief, Cede & Co. holds the Certificates for the ultimate benefit of others.

9. Interpleader Defendants Does 1 through 100 (the "Doe Defendants") are, upon information and belief, beneficial owners of the Certificates held by Cede & Co. Wells Fargo does not know the names or true identities of the Doe Defendants.

## BACKGROUND

10. Wells Fargo is a party to the PSA, pursuant to which the Trust issued Certificates, the Holders of which (also referred to herein as Certificateholders) are entitled, in accordance with the PSA's terms, to distribution of certain Interest Funds and Principal Funds delivered to Wells Fargo in respect of the Mortgage Loans and related assets held by the Trust. The Mortgage Loans held by the trusts are divided into two Loan Groups (Group 1 Loans and Group 2 Loans), which are in turn each divided into two Loan Subgroups (Subgroup 1-1 and 1-2 Loans and Subgroup 2-1 and 2-2 Loans, respectively) under the PSA. The Certificates represent 100% of the beneficial interest in the Mortgage Loans and related assets held by the Trust.

11. Distributions to Certificateholders, along with other amounts owed to various parties, are paid on a specified date each month (each, a Distribution Date) from Available Funds, which consist of Interest Funds and Principal Funds delivered in respect of the Mortgage

Loans and other Trust assets. Interest Funds generally include, among other things, proceeds related to interest on the Mortgage Loans held by the Trust. Principal Funds generally include, among other things, proceeds related to principal payments on the Mortgage Loans.

12. The PSA requires that Wells Fargo, as Trust Administrator, distribute Interest Funds and Principal Funds for each Loan Group to Certificateholders and other parties in the order of priority set forth in Sections 4.02 (Group 1 Certificates), 4.03 (Group 2 Certificates), 4.07 (Group 1 Certificate Cap Account), 4.08 (Group 1 Certificate Basis Risk Cap Account), 4.09 (Group 2 Certificate Cap Account), and 4.10 (Group 2 Certificate Basis Risk Cap Account) of the PSA for each Loan Group (*i.e.*, the "waterfall" provisions).

13. Under the waterfall provisions, junior Classes of Certificates generally receive distributions of Interest Funds and Principal Funds only if and to the extent more senior Classes of Certificates have received their full scheduled distributions of interest and principal for a given Distribution Date.

14. Assured serves as Certificate Insurer in respect of the Class 1-1A2, 1-2A2, 2-1A2, 2-2A3 and 2-2A6 Certificates (the "Insured Certificates"). As such, Assured guarantees the payment of certain distributions to Holders of the Insured Certificates under the terms of the PSA and a Certificate Insurance Policy issued by Assured.

15. To the extent Assured makes payments in respect of the Insured Certificates in its capacity as Certificate Insurer, it has certain defined rights to reimbursement of those amounts, as set forth in the PSA that are set forth in the PSA's waterfall. For example, Section 4.02(a)(2)(B)(b) provides that Interest Funds for Loan Group 1 are to be distributed "to the Certificate Insurer, up to the sum of the Group 1 Premium Distribution Amount and the Group 1 Certificate Insurer Reimbursement Amount, if any, for such Distribution Date, to the extent

5

remaining unpaid." Section 4.03(a)(2)(B)(b) of the PSA sets forth similar reimbursement provisions with respect to Loan Group 2.

16. In connection with prior distributions under the waterfall, Wells Fargo has distributed Interest Funds and Principal Funds to certain Certificateholders and others. With respect to the distribution of Interest Funds after payment of Interest Funds to Holders of Senior Certificates, Wells Fargo had construed Sections 4.02(a)(2)(B)(b) and 4.03(a)(2)(B)(b) of the PSA waterfall to provide for the reimbursement of Assured of any amounts previously paid by Assured for claims in respect of the Insured Certificates, up to the amount of Interest Funds remaining for each Loan Group at this step in the waterfall ("Excess Interest Funds"). Rather than distribute the reimbursement amounts to Assured on each Distribution Date, Wells Fargo had credited this amount against amounts that were payable by Assured to the Distribution Account for then-current claims in respect of the Insured Certificates.

## THE DISPUTE

17. On August 21, 2013, representatives of certain Certificateholders holding beneficial ownership of Class 1-2A1 Certificates issued by the Trust, including Wales (together, the "Objecting Certificateholders"), contacted Wells Fargo objecting to the reimbursement of Assured at Sections 4.02(a)(2)(B)(b) and 4.03(a)(2)(B)(b) of the PSA waterfall. The Objecting Certificateholders asserted that they were "concerned that moneys are being distributed to Assured that should rightfully be distributed to Certificateholders."[2]

18. The Objecting Certificateholders argued that reimbursement of Assured at Sections 4.02(a)(2)(B)(b) and 4.03(a)(2)(B)(b) of the PSA waterfall was not permitted because

---

[2] Subsequent to the filing of the initial complaint in this interpleader action, Wells Fargo was advised by counsel for Wales that the beneficial ownership of a number of the Objecting Certificateholders' holdings in the Trust had been transferred to Wales.

6

the reimbursement amounts did not arise out of Assured's subrogation rights. In particular, the Objecting Certificateholders asserted that "[t]he United State District Court's analysis in the litigation involving the MARM 2006-OA2 Trust clearly applies with equal force to the MARM 2007-3 Trust and should result in distributions to Assured of 'Certificate Insurer Reimbursement Amounts' if and only to the extent that Assured's subrogation rights in the insured certificates arise – *i.e.*, if the insured certificates are entitled to distribution of amounts they previously received from Assured."[3] The Objecting Certificateholders demanded that reimbursement of Assured from Excess Interest Funds should stop and that, at minimum, payments that would otherwise be made to Assured be placed into escrow on a going forward basis.

19.   On August 22, 2013, representatives of the Objecting Certificateholders sent a memorandum to Wells Fargo detailing their objections (the "August 22 Memorandum"). In the August 22 Memorandum, the Objecting Certificateholders reiterated that they believed that the analysis by Judge Sand in the litigation relating to Assured's reimbursement rights in the MARM 2006-OA2 transaction, in which Judge Sand held that Assured was "entitled only to subrogation of the rights of the Insured Certificates at each stage that the Certificate Insurer is identified in the payment waterfall," applied to Assured's reimbursement rights set forth in the waterfall for the MARM 2007-3 Trust.

20.   The Objecting Certificateholders also asserted in the August 22 Memorandum that, like the payment waterfall in the MARM 2006-OA2 litigation, "the payment waterfall of the MARM 2007-3 Trust includes a potential payment to Assured of either a Group Certificate Insurer Reimbursement Amount or Subgroup Certificate Insurer Reimbursement Amount at each

---

[3]   The MARM 2006-OA2 litigation was an interpleader action in the United District Court for the Southern District of New York entitled Wells Fargo Bank, N.A. v. ESM Fund I, LP, et al. (10 Civ. 7332 (AJN and formerly LAS) (MHD)).

step in the waterfall immediately following a step where an insured certificate could be entitled to some distribution of amounts that are covered by the Insurance Policy where Assured's subrogation rights could take effect."

21. The Objecting Certificateholders further asserted in the August 22 Memorandum (quoting the Court's opinion) that, as in the MARM 2006-OA2 waterfall, Assured was entitled to be repaid "'only from the sources and in the manner provided herein for the payment of such principal and interest,' PSA § 12.05, to wit, through subrogation. If the drafters had intended to provide Assured with a reimbursement right separate from its right of subrogation, it is implausible that they would use the waterfall to grant such a right and not include any mention of it in the section of the PSA expressly devoted to the rights of the Certificate Insurer, PSA § 12.05 (mentioning only subrogation rights), nor in the Policy or Prospectus Supplement."

22. In the August 22 Memorandum, the Objecting Certificateholders also took the position that construing Sections 4.02(a)(2)(B)(b) and 4.03(a)(2)(B)(b) of the PSA as requiring reimbursement of all amounts paid by Assured for claims in respect of Insured Certificates, rather than making distributions to Assured only when it was entitled to payment due to its subrogation rights, effectively prioritizes distributions to Holders of Insured Certificates, results in the senior Certificates receiving less of the Interest Funds and covering the principal losses of the subordinate, Insured Certificates and subordinates distributions to Holders of Classes of Certificates that are senior to the Insured Certificates.

23. In the August 22 Memorandum, the Objecting Certificateholders further asserted that this interpretation of Sections 4.02(a)(2)(B)(b) and 4.03(a)(2)(B)(b) of the PSA effectively "turns on its head the intended subordination of the certificates set forth in the PSA, Prospectus Supplement and Free Writing Prospectus" filed with the SEC relating to the MARM 2007-3

8

Trust, which identified certain Certificates, including those beneficially owned by the Objecting Certificateholders, as "super senior" and others, such as the Insured Certificates, as "senior support."

24. The August 22 Memorandum concluded by asserting that Wells Fargo "should only distribute funds to Assured from the MARM 2007-3 Trust if the insured certificates would otherwise receive amounts they had previously been paid based on insurance claims to Assured – in other words, when Assured's subrogation rights arose."

25. Thus, under the Objecting Certificateholders' interpretation of the waterfall, Assured would only be entitled to receive reimbursement at Sections 4.02(a)(2)(B)(b) and 4.03(a)(2)(B)(b) of the PSA for amounts arising out of Assured's subrogation rights – *i.e.*, amounts paid to Holders of Insured Certificates related to interest – and additional funds would flow to the Net Monthly Excess Cashflow waterfalls in Sections 4.02(c) and 4.03(c) for distribution to Holders prior to any reimbursement of Assured.

26. Upon information and belief, one or more Doe Defendants has taken or will also take the position that Assured is only entitled to receive reimbursement from Excess Interest Funds pursuant to Sections 4.02(a)(2)(B)(b) and 4.03(a)(2)(B)(b) of the PSA for amounts arising out of Assured's subrogation rights.

27. On September 17, 2013, representatives of Wells Fargo participated in a telephonic discussion with representatives of Assured. On the call, Assured disagreed with and disputed the positions taken by the Objecting Certificateholders. Assured insisted that, under the terms of the PSA, it was entitled to be reimbursed from Excess Interest Funds for all amounts that it had previously paid to Holders of Insured Certificates and that, on future Distribution Dates, it will be entitled to reimbursement from Excess Interest Funds of amounts previously

paid for claims in respect of Insured Certificates pursuant to Sections 4.02(a)(2)(B)(b) and 4.03(a)(2)(B)(b) of the PSA, even if such payments were not made with respect to interest owing to Insured Certificates.

28. By letter dated September 23, 2013 (the "September 23, 2013 Letter"), Assured provided further detail to Wells Fargo regarding its position. Assured asserted, among other things, that Judge Sand's decision in the MARM 2006-OA2 litigation does not analyze the MARM 2007-3 transaction and that Judge Sand himself observed that "his analysis regarding the 2006 Transaction was limited to narrowly 'resolv[ing] the question pending before [the] Court.'" Assured also asserted that the waterfall set forth in the MARM 2007-3 PSA was fundamentally different than that analyzed by Judge Sand in the MARM 2006-OA2 litigation.

29. Assured asserted in the September 23, 2013 Letter that, unlike the MARM 2006-OA2 transaction, which had a single waterfall of "Available Funds," the MARM 2007-3 waterfall has multiple waterfalls with multiple funding sources and that reimbursing Assured from Excess Interest Funds did not subordinate the Senior Certificates to the Insured Certificates. According to Assured, in the Interest Funds waterfall for each Loan Group, Assured only receives reimbursement at Sections 4.02(a)(2)(B)(b) and 4.03(a)(2)(B)(b) of the PSA after Senior Certificateholders receive current interest distributions to which they were entitled. Thus, "[d]istributions under the separate Principal Funds waterfalls draw from completely different cash flow sources, and Assured's reimbursement from interest funds in the Interest Funds waterfall has no impact on the separate receipt by Senior Certificate holders of principal funds from the Principal Funds waterfalls.... Assured only receives reimbursement amounts from the Principal Funds waterfall after the Senior Certificates (both insured and uninsured Senior Certificates) have received the principal distributions to which they are entitled."

30. Assured further asserted that a key rationale for Judge Sand's decision, "that reading [the] PSA to give Assured a right to full reimbursement after the Senior Certificate holders received current interest would render parts of the 2006 Transaction's waterfall redundant or meaningless," was inapplicable to the MARM 2007-3 transaction, where "each instance where Assured is entitled to reimbursement provides for payment from a different source, and no instance is redundant of any of the other instances in the various waterfalls."

31. Assured also asserted in the September 23, 2013 Letter that its interpretation of the waterfall was supported by certain other structural features of the MARM 2007-3 transaction in the PSA and gave effect to negotiated provisions in the PSA with respect to the payment of reimbursement from Excess Interest Funds.

32. Finally, in the September 23, 2013 Letter, Assured reserved all of its rights, "including to take any and all appropriate legal action against Wells Fargo to enforce Assured's reimbursement rights under the MARM 2007-3 PSA and related documents."

33. Sections 4.02(a)(2)(B)(b) and 4.03(a)(2)(B)(b) of the PSA and other relevant provisions of the PSA do not unambiguously resolve the dispute as to reimbursement of the amounts paid by Assured for claims in respect of Insured Certificates from Excess Interest Funds.

34. A dispute and controversy thus now exists among the various parties with an interest in the Excess Interest Funds as to whether the PSA entitles Assured to reimbursement from Excess Interest Funds of amounts previously paid for claims in respect of Insured Certificates that are not related to interest.

35. The last Distribution Date occurred on September 25, 2013. Because of the real dispute between Assured and the Objecting Certificateholders described above, Wells Fargo was

unable to determine, without incurring the risk of liability and litigation (and related costs), whether Sections 4.02(a)(2)(B)(b) and 4.03(a)(2)(B)(b) of the PSA entitle Assured to reimbursement from Excess Interest Funds and a credit in reduction of the amount of its claims payment obligation based on all amounts previously paid by Assured in respect of Insured Certificate claims, and therefore Wells Fargo commenced this interpleader action. Based on the dispute between Assured and the Objecting Certificateholders described above, Wells Fargo placed into escrow amounts reflecting the differences between the two payment waterfall models described above in connection with the September 25, 2013 Distribution Date.

36.     The next Distribution Date occurs on October 25, 2013. The amount to which each Class of Certificates is entitled and the policy claims to be made against Assured in connection with each future Distribution Date differ under the two competing interpretations of the payment waterfall provisions in the PSA and are dependent on the resolution of this interpleader action.

37.     On the October 25, 2013 Distribution Date, and each future Distribution Date during the pendency of this action, Wells Fargo intends to distribute to Certificateholders the lesser amount to which they would be entitled under the two competing interpretations of the payment waterfall provisions in the PSA. In connection with each monthly Distribution Date, Wells Fargo will place amounts into the escrow subaccount as necessary to reflect the differences between the competing interpretations of the payment waterfall provisions in the PSA. These amounts may require further adjustments going forward. As of the October 25, 2013 Distribution Date, Wells Fargo will have deposited a cumulative total of $3,029,398.89 into escrow.

38. Until further order of the Court in respect of the escrowed funds, Wells Fargo will not distribute the escrowed funds to Assured or Certificateholders. Wells Fargo is ready and willing to distribute the escrowed funds in such manner as the Court shall direct.

39. Wells Fargo has no interest as a claimant in the escrowed funds, except to the extent of its reasonable attorneys' fees, costs and disbursements in respect of this action, as may be awarded by the Court.

40. This action is not brought by collusion with any of the Interpleader Defendants.

## PLEA FOR RELIEF

**WHEREFORE,** Wells Fargo asks this Court:

(i) To order the Interpleader Defendants to interplead and to settle all claims to the escrowed funds between themselves and any other persons who claim or may claim an interest, beneficial or legal, in such funds;

(ii) To order all persons with an interest in the escrowed funds to appear and plead by a date certain following personal service or publication by notice in accordance with 28 U.S.C. § 1655 and, to the extent of the escrowed funds, to adjudicate the dispute described herein in respect of any absent defendants as if such defendants had been served with process;

(iii) To order the Interpleader Defendants to take all steps necessary to effect the Court's judgment in this interpleader action;

(iv) To restrain the Interpleader Defendants and all claiming through or acting with them, or claiming any interest in the escrowed funds, from commencing or prosecuting any separate proceeding against Wells Fargo concerning or relating to the issues in this action; and

(v)   To award Wells Fargo and the Trust such other and further relief (including any of either Wells Fargo's or the Trust's otherwise unreimbursed legal fees, expenses and costs) as the Court may deem just, proper and equitable.

Dated: New York, New York
October 25, 2013

SEWARD & KISSEL LLP

By: /s/ Dale C. Christensen
Dale C. Christensen, Jr.
Thomas Ross Hooper
One Battery Park Plaza
New York, New York 10004
(212) 574-1200

*Attorneys for Interpleader Plaintiff Wells Fargo Bank, N.A., solely in its capacity as Trust Administrator of MASTR Adjustable Rate Mortgages Trust 2007-3*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| WELLS FARGO BANK, N.A., solely in its capacity as Trust Administrator of MASTR Adjustable Rate Mortgages Trust 2007-3,<br><br>Interpleader Plaintiff,<br><br>- against -<br><br>WALES LLC, ASSURED GUARANTY MUNICIPAL CORP. (f/k/a FINANCIAL SECURITY ASSURANCE INC.), THE DEPOSITORY TRUST COMPANY, CEDE & CO., as registered Holder of certain Certificates and nominee name of the Depository Trust Company, and DOES 1 through 100, beneficial owners of certain Certificates,<br><br>Interpleader Defendants. | Case No. 13 Civ. 06781 (PGG) (HP)<br><br>**CERTIFICATE OF SERVICE** |

   I hereby certify that I caused the Amended Interpleader Complaint to be served by first class mail and electronic mail on the following persons:

Jayant W. Tambe
Kelly A. Carrero
Alex P. McBride
Jones Day
222 East 41st Street
New York, NY 10017
*Counsel for Wales LLC*

Roger A. Cooper
James W. Doggett
Cleary Gottlieb Steen & Hamilton LLP
One Liberty Plaza
New York, NY 10006
*Counsel for Assured Guaranty Municipal Corp.*
*(f/k/a Financial Security Assurance Inc.)*

Eric Heichel
Eiseman Levine Lehrhaupt & Kakoyiannis, P.C.
805 Third Ave., 10th Floor
New York, NY 10022
*Counsel for Cede & Co. and The Depository Trust Company*

                                                               /s/ Thomas Ross Hooper
                                                               Thomas Ross Hooper