UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

| | |
|---|---|
| WELLS FARGO BANK, N.A., solely in its capacity as Trust Administrator of MASTR Adjustable Rate Mortgages Trust 2007-3,<br><br>   Interpleader Plaintiff,<br><br>  - against -<br><br>WALES LLC, ASSURED GUARANTY MUNICIPAL CORP. (f/k/a FINANCIAL SECURITY ASSURANCE INC.), THE DEPOSITORY TRUST COMPANY, CEDE & CO., as registered Holder of certain Certificates and nominee name of the Depository Trust Company, and DOES 1 through 100, beneficial owners of certain Certificates,<br><br>   Interpleader Defendants. | :<br>:<br>:<br>:<br>: 13-cv-6781 (PGG)(HP)<br>:<br>:<br>:<br>: **ECF Case**<br>:<br>: **Electronically Filed**<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

**PROPOSED INTERVENOR BATTENKILL INSURANCE COMPANY, LLC'S
<u>MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO INTERVENE</u>**

                  SKADDEN, ARPS, SLATE,
                   MEAGHER & FLOM LLP
                  Jay B. Kasner
                  Scott D. Musoff
                  Alexander C. Drylewski
                  Four Times Square
                  New York, New York 10036
                  Phone:  (212) 735-3000

                  *Attorneys for Battenkill Insurance*
                   *Company, LLC*

**TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ..................................................................................................1

STATEMENT OF FACTS ..........................................................................................................3

      A.      The MARM 2007-3 Transaction .............................................................3

      B.      The Reinsurance Agreement....................................................................4

      C.      Procedural History ...................................................................................6

ARGUMENT.................................................................................................................................7

BATTENKILL SHOULD BE PERMITTED TO INTERVENE ....................................................7

I.     BATTENKILL SATISFIES THE REQUIREMENTS OF RULE 24(a) TO INTERVENE AS OF RIGHT....................................................................................7

      A.      Battenkill's Motion to Intervene is Timely................................................7

      B.      Battenkill Has a Direct and Substantial Interest in the Interpleader Action ............9

      C.      Without Intervention, Battenkill's Interests in the Interpleader Action Will Be Impaired.......................................................11

      D.      Battenkill's Interests Are Not Adequately Represented By the Existing Parties.......................................................12

II.    ALTERNATIVELY, BATTENKILL SHOULD BE ALLOWED TO PERMISSIVELY INTERVENE UNDER RULE 24(b)...................................................14

CONCLUSION............................................................................................................................15

# **TABLE OF AUTHORITIES**

### **CASES**

*Consolidated Ediosn, Inc. v. Northeast Utilities*,
     No. 01 Civ. 1893(JGK), 2004 WL 35445 (S.D.N.Y. Jan. 7, 2004)...................13

*Bridgeport Guardians, Inc. v. Delmonte*,
     602 F.3d 469 (2d Cir. 2010)..................................................................9

*Butler Fitzgerald & Potter v. Sequa Corp.*,
     250 F.3d 171 (2d Cir. 2001)..................................................................7

*Cohen v. Republic of the Philippines*,
     146 F.R.D. 90 (S.D.N.Y. 1993) ...........................................................13

*Cole Mechanical Corp. v. National Grange Mutual Insurance Co.*,
     No. 06 Civ. 2875(LAK)(HBP), 2007 WL 2593000 (S.D.N.Y. Sept. 7, 2007)........3, 10, 12

*Conservation Law Foundation of New England, Inc. v. Mosbacher*,
     966 F.2d 39 (1st Cir. 1992)..................................................................9

*D'Amato v. Deutsche Bank*,
     236 F.3d 78 (2d Cir. 2001)..................................................................7

*Diversified Group, Inc. v. Daugerdas*,
     217 F.R.D. 152 (S.D.N.Y. 2003) ........................................................15

*Equal Employment Opportunity Commission v. Mavis Discount Tire*,
     No. 12 Civ. 0741(KPF), 2013 WL 5434155 (S.D.N.Y. Sept. 30, 2013) .............8

*Equal Employment Opportunity Commission v. Rekrem, Inc.*,
     199 F.R.D. 526 (S.D.N.Y. 2001) .........................................................9

*German v. Federal Home Loan Mortgage Corp.*,
     896 F. Supp. 1385 (S.D.N.Y. 1995)....................................................14

*Home Insurance Co. v. Liberty Mutual Insurance Co.*,
     No. 87 Civ. 0675(SWK), 1990 WL 188925 (S.D.N.Y. Nov. 20, 1999)............13

*Honeywell, Inc. v. Sperry Rand Corp.*,
     54 F.R.D. 593 (D. Minn. 1971)..........................................................11

*Long Island Trucking, Inc. v. Brooks Pharmacy*,
     219 F.R.D. 53 (E.D.N.Y. 2003) ...........................................................8

*Louis Berger Group, Inc. v. State Bank of India*,
     802 F. Supp. 2d 482 (S.D.N.Y. 2011).................................................15

*Maryland Casualty Co. v. W.R. Grace & Co.*,
 No. 88 Civ. 2613(JSM), 1196 U.S. Dist. LEXIS 898 (S.D.N.Y. Jan. 30, 1996) ............... 14

*Mortgage Lenders Network, Inc. v. Rosenblum*,
 218 F.R.D. 381 (E.D.N.Y. 2003) ................................................................................. 8, 11

*Mutual Fire, Marine & Inland Insurance Co. v. Adler*,
 726 F. Supp. 478 (S.D.N.Y. 1989) ................................................................................... 11

*N.J. Carpenters Health Fund v. Residential Capital, LLC*,
 No. 08 CV 8781(HB), 08 CV 5093(HB), 2010 WL 5222127 (S.D.N.Y. Dec. 22, 2010) ................................................................................................................................ 10

*N.Y. Public Interest Research Group, Inc. v. Regents of the University of the State of N.Y.*,
 516 F.2d 350 (2d Cir. 1975) ....................................................................................... 11, 13

*Oneida Indian Nation of Wisc. v. New York*,
 732 F.2d 261 (2d Cir. 1984) .............................................................................................. 3

*Padilla v. Maersk Line, Ltd.*,
 No. 07 Civ. 3638(PKL)(THK), 2009 WL 3496877 (S.D.N.Y. Oct. 29, 2009) .................. 8

*Pure Oil Co. v. Ross*,
 170 F.2d 651 (7th Cir. 1948) ........................................................................................... 11

*Reassure America Life Insurance Co. v. Shomers*,
 265 F.R.D. 672 (S.D. Fla. 2010) ...................................................................................... 12

*Sackman v. Liggett Group, Inc.*,
 167 F.R.D. 6 (E.D.N.Y. 1996) ......................................................................................... 12

*Salomon Smith Barney, Inc. v. McDonnell,*
 No. 01 CIV 2874 RO., 2001 WL 1020460 (S.D.N.Y. Sept. 5, 2001) ........................ 7, 15

*SEC v. Everest Management Corp.*,
 475 F.2d 1236 (2d Cir. 1972) .......................................................................................... 11

*Select Retrieval, LLC v. ABT Electronics*,
 No. 11 C 03752, 2013 WL 6576861 (N.D. Ill. Dec. 13, 2013) ....................................... 13

*Shawnee Fire Insurance Co. v. Cosgrove*,
 116 P. 819(1911) .............................................................................................................. 13

*Spirt v. Teachers' Insurance & Annuity Association*,
 93 F.R.D. 627(S.D.N.Y. 1982) ........................................................................................ 14

*U.S. Polo Association, Inc. v. PRL USA Holdings, Inc.*,
 No. 09 Civ. 9476, 2013 WL 837565 (S.D.N.Y. Mar. 6, 2013) ........................................ 14

*United States v. Hooker Chemicals & Plastics Corp.*,
    749 F.2d 968 (2d Cir. 1984) ...................................................................................... 9

*United States v. Pitney Bowes, Inc.*,
    25 F.3d 66 (2d Cir. 1994) .......................................................................................... 8

## RULES AND REGULATIONS

Federal Rule of Civil Procedure 24 ........................................................................... *passim*

## OTHER AUTHORITES

Wright, Miller, and Kane, Federal Practice and Procedure: Civil 2d § 1916 (1986) ....................... 8

Proposed Intervenor Battenkill Insurance Company, LLC ("Battenkill") respectfully submits this memorandum of law in support of its motion to intervene as of right pursuant to Federal Rule of Civil Procedure 24(a) or, in the alternative, for permissive intervention pursuant to Federal Rule of Civil Procedure 24(b).[1]

## PRELIMINARY STATEMENT

Battenkill satisfies all four requirements to intervene as of right under Rule 24(a), namely: (1) Battenkill's motion is timely; (2) Battenkill claims an interest relating to the property or transaction that is the subject of the action; (3) Battenkill is so situated that, without intervention, the disposition of the action may impair its interest; and (4) Battenkill's interest is not adequately represented by the existing parties. Fed. R. Civ. P. 24(a).

*First*, there can be little doubt that Battenkill acted promptly and that its motion is timely. (*Infra* § I.A.) Approximately one month after Wells Fargo Bank, N.A. ("Wells Fargo") filed its Amended Interpleader Complaint ("AIC") on October 25, 2013, Battenkill reached out to each party named in the AIC regarding its intervention. Each party consented with the sole exception of non-insured certificateholder Wales LLC ("Wales"). Battenkill also appeared at the December 5, 2013 hearing to inform the Court of its intention to intervene and that it would abide by any schedule entered regarding the existing parties' contemplated motion practice. Given these facts, there is plainly no prejudice to any of the existing parties by Battenkill's intervention, and Wales has not asserted otherwise.

*Second*, in stark contrast to the lack of prejudice to Wales if intervention is granted, Battenkill's rights will be severely prejudiced if its motion is denied. By virtue of a

---

[1] Battenkill's proposed Crossclaim and Answer to the Amended Interpleader Complaint is attached as Exhibit A to the accompanying Declaration of Scott D. Musoff, dated January 10, 2014 ("Musoff Decl."), exhibits to which are cited herein as "Ex. __."

1

Quota Share Reinsurance Agreement (the "Reinsurance Agreement"), entered into between Battenkill and interpleader defendant Assured Guaranty Municipal Corp. ("Assured") as of July 2013, Battenkill has a direct, substantial and legally protectable interest in the very funds that are the subject of this interpleader lawsuit.  (*Infra* § I.B.)  Indeed, under the Reinsurance Agreement, Battenkill has an 85% stake in the disputed funds that Wells Fargo has placed into escrow (the "Disputed Funds") and was assigned rights to those funds.  Thus, a determination by this Court as to the proper allocation of the Disputed Funds among the interpleader parties will directly affect Battenkill's rights, in this or any subsequent litigation.  (*Infra* § I.C.)

*Third*, Battenkill's rights are not adequately represented by the existing parties. (*Infra* § I.D.)  While Assured retains a 15% interest in the funds, Battenkill's much larger stake in the outcome of this action requires its intervention now in order to fully protect the rights to which it was assigned under the Reinsurance Agreement.  Moreover, while Battenkill and Assured's interests are notionally aligned at this stage of the litigation, their interests may diverge in the event the Court were to conclude that non-insured senior certificateholders are entitled to funds previously paid to Assured, insofar as the parties may differ as to their respective liability for those payments.  Accordingly, Battenkill cannot rely solely upon Assured (or any other existing party) to adequately protect its interests.

*Finally*, even assuming *arguendo* that Battenkill is not entitled to intervene as of right under Rule 24(a) (and it is), the Court should nevertheless allow Battenkill to permissively intervene under Rule 24(b) given its strong interests in the outcome of the action and because intervention will not prejudice any of the existing parties or delay the proceedings.  (*Infra* § II.) Intervention is not only appropriate here given the interpleader nature of this action – which is specifically designed to adjudicate the respective rights of all interested parties – but it also will

significantly contribute to the full development of the underlying factual issues before the Court and to the efficient and equitable adjudication of all legal questions presented.

**STATEMENT OF FACTS**[2]

  A.  **The MARM 2007-3 Transaction**

    This interpleader action arises from the MASTR Adjustable Rate Mortgages Trust 2007-3 securitization transaction (the "MARM 2007-3 Transaction"), which is backed by a pool of residential mortgage loans. (AIC ¶ 1.) The loans were pooled into a securitization trust, which then issued certificates entitling investors to distributions of principal and interest funds generated by the underlying loans according to their priority in the payment "waterfall." (*Id.* ¶ 10-11.) The distributions are paid on a monthly basis by Wells Fargo, as Trust Administrator for the MARM 2007-3 Transaction, according to the payment waterfall specified in the MARM 2007-3 Transaction's pooling and servicing agreement ("PSA"). (*Id.* ¶ 12-13.)

    Assured serves as the Certificate Insurer with respect to certain classes of certificates and thus guarantees the payment of distributions to holders of insured certificates under the terms of the PSA and Assured's financial guaranty insurance policy for the MARM 2007-3 Transaction. (AIC ¶ 14.) Under Sections 4.02 and 4.03 of the PSA, Assured is entitled to receive certain "Reimbursement Amounts" of excess interest funds on each distribution date to the extent that Assured has made payments to insured certificateholders in its capacity as Certificate Insurer. (*Id.* ¶¶ 15-16.)

---

[2] In considering a motion to intervene, the Court must accept as true all non-conclusory allegations put forth by the intervention applicant. *See Cole Mech. Corp. v. Nat'l Grange Mut. Ins. Co.*, No. 06 Civ. 2875(LAK)(HBP), 2007 WL 2593000, at *2 (S.D.N.Y. Sept. 7, 2007) (Pitman, M.J.); *accord Oneida Indian Nation of Wisc. v. New York*, 732 F.2d 261, 265 (2d Cir. 1984).

On August 21, 2013, certain non-insured senior certificateholders, led by Wales LLC ("Wales"), objected to Wells Fargo's historic practice of reimbursing Assured from excess interest funds under the plain terms of Sections 4.02 and 4.03 of the PSA, claiming that such funds should be distributed to senior certificateholders instead. (AIC ¶¶ 17-25.) In light of this dispute, beginning on September 25, 2013, Wells Fargo placed the Disputed Funds into an escrow account pending a judicial determination concerning the proper interpretation of the PSA's waterfall. (*Id.* ¶ 35.) That same day, Wells Fargo commenced the instant interpleader action in this Court. *See* ECF No. 1.

B. **The Reinsurance Agreement**

On May 6, 2013, prior to the commencement of the interpleader action, Assured and UBS Real Estate Securities Inc. ("UBS RESI"), among other parties, entered into an agreement which resolved certain litigation claims asserted by Assured concerning three mortgage-backed securitizations issued by UBS RESI, including the MARM 2007-3 Transaction. (Musoff Decl. ¶ 3.) In connection with this agreement, UBS RESI agreed to create and license Battenkill to enter into a related reinsurance settlement with Assured. (*Id.* ¶ 4.) Battenkill, an indirect wholly-owned subsidiary of UBS RESI, was organized as a limited liability company on April 22, 2013 and authorized as a Vermont domiciled pure captive insurance company on June 6, 2013. (*Id.*) On July 11, 2013, Battenkill entered into the Reinsurance Agreement with Assured covering, *inter alia*, the MARM 2007-3 Transaction. (Ex. B; *see also id.* Schedule A.) Simultaneously with entering into the Reinsurance Agreement, the parties also entered into two trust agreements pursuant to which Battenkill agreed to collateralize its obligations to Assured. (Musoff Decl. ¶ 5.)

Under Section 2.2 of the Reinsurance Agreement, Battenkill agreed to indemnify Assured for "the Quota Share of the Losses paid by [Assured] after the Initial Calculation Date."

4

(Ex. B at 6.) The Reinsurance Agreement defines the "Quota Share" as 85% of such "Losses," which include "amounts paid by [Assured] in cash in settlement or satisfaction of claims under the Covered Policies," including Policy No. 51834-N, the financial guaranty policy provided by Assured with respect to the MARM 2007-3 Transaction. (*Id.* at 3, 4, 6, Schedule B.)

In addition to obligating Battenkill to pay 85% of all "Losses" actually paid by Assured under its financial guaranty policy for the MARM 2007-3 Transaction, the Reinsurance Agreement also provides Battenkill with a financial and legal interest in certain recoveries of excess interest funds paid to Assured. Specifically, under Section 4.1(a) of the Reinsurance Agreement, Assured is required to deposit into a supplemental trust account – which was established pursuant to a separate trust agreement entered into in connection with the Reinsurance Agreement – at least "85% of the amount of each Reimbursement Amount" it receives. (Ex. B at 7.)[3] The Reinsurance Agreement defines Reimbursement Amounts as "all cash amounts including those paid from 'excess spread' or characterized as recoveries by subrogation pursuant to the terms of the applicable Covered Transactions paid to [Assured] in its capacity as insurer under the Covered Policies with respect to any Covered Transactions." (*Id.* at 4.)

Finally, Section 4.1(e) of the Reinsurance Agreement provides that Assured "hereby assigns to [Battenkill] all of [Assured's] rights and remedies with respect to the Reimbursement Amounts pursuant to the terms and subject to the conditions set forth in this Agreement." (Ex. B at 9.) The Reinsurance Agreement also states that the assignment of

---

[3] Assured is currently obligated to deposit 85% of all Reimbursement Amounts into the supplemental trust. (Musoff Decl. ¶ 8.) If Assured's aggregate net losses fall below a predetermined amount set forth in the Reinsurance Agreement, Assured will be required to deposit 100% of all Reimbursement Amounts into the supplemental trust in which Battenkill has an interest. (Ex. B at 7.)

Assured's rights and remedies concerning Reimbursement Amounts "does not encompass and shall in no way affect, increase or diminish" Assured's interest in "receiv[ing] payment of its share of the Reimbursement Amounts in accordance with Section 4.1(a)." (*Id.*)

### C. Procedural History

On September 25, 2013, Wells Fargo commenced this interpleader action. ECF No. 1. On October 25, 2013, Wells Fargo filed the AIC, naming Assured, Wales, The Depository Trust Company, CEDE & Co. and Does 1 through 100 as interpleader defendants. ECF No. 15. Approximately one month later, Battenkill reached out to all parties named in the AIC to seek their consent to Battenkill's intervention in the action. (Musoff Decl. ¶ 11.) Wells Fargo, Assured, The Depository Trust Company and CEDE & Co. consented to intervention. (*Id.* ¶ 12.) Wales requested permission to review the Reinsurance Agreement prior to determining whether it would give its consent, to which Battenkill agreed. (*Id.*)

On December 5, 2013, this Court held a preliminary conference with all parties to this action, at which Battenkill appeared and informed the Court of its intention to intervene. (*Id.* ¶ 13.) On December 23, 2013, Wales informed Battenkill that it would not consent to its intervention based on the Reinsurance Agreement and stated that, in its view, Assured was capable of adequately representing Battenkill's interests in the action, thus necessitating Battenkill's instant motion to intervene. (*Id.* ¶ 14.) Wales did not contend that it would suffer any prejudice by virtue of Battenkill's intervention.

# ARGUMENT

## BATTENKILL SHOULD BE PERMITTED TO INTERVENE

### I. BATTENKILL SATISFIES THE REQUIREMENTS OF RULE 24(a) TO INTERVENE AS OF RIGHT

Under Federal Rule of Civil Procedure 24(a), a party may intervene in an action as of right if four elements are satisfied: (1) the motion is timely; (2) the intervenor claims an interest relating to the property or transaction that is the subject of the action; (3) the intervenor is so situated that, without intervention, the disposition of the action may impair its interest; and (4) the interest is not already adequately represented by the existing parties. *Butler Fitzgerald & Potter v. Sequa Corp.*, 250 F.3d 171, 176 (2d Cir. 2001). Intervention as of right "is particularly appropriate in an interpleader action." *Salomon Smith Barney, Inc. v. McDonnell*, No. 01 CIV 2874 RO., 2001 WL 1020460, at *1 (S.D.N.Y. Sept. 5, 2001). This is because "'a traditional basis for intervention [as of right] derives from interpleader practice; when a number of persons possess claims to a fund which are or may be mutually exclusive, intervention is allowed by a claimant.'" *Id.* (alteration in original) (quoting *Cascade Natural Gas Corp. v. El Paso Natural Gas Co.*, 386 U.S. 129, 146 (1967)).

Here, Battenkill satisfies all four requirements for intervention as of right.

#### A. Battenkill's Motion to Intervene is Timely

There can be little doubt that Battenkill's motion is timely. The timeliness of a motion to intervene is a question committed to the sound discretion of the court, "'evaluated against the totality of the circumstances.'" *D'Amato v. Deutsche Bank*, 236 F.3d 78, 84 (2d Cir. 2001) (citation omitted). "Among the circumstances generally considered are: (1) how long the applicant had notice of the interest before it made the motion to intervene; (2) prejudice to existing parties resulting from any delay; (3) prejudice to the applicant if the motion is denied;

and (4) any unusual circumstances militating for or against a finding of timeliness." *United States v. Pitney Bowes, Inc.*, 25 F.3d 66, 70 (2d Cir. 1994). The most important consideration is whether there is any prejudice to the existing parties resulting from the delay. *See* Wright, Miller, and Kane, Federal Practice and Procedure: Civil 2d § 1916 (1986); *Long Island Trucking, Inc. v. Brooks Pharmacy*, 219 F.R.D. 53, 55 (E.D.N.Y. 2003).

Here, none of the existing parties would be prejudiced by intervention in this action, nor could they claim otherwise. Indeed, with the exception of Wales, all of the parties have expressly consented to Battenkill intervening in the action. There has been very little activity in the case since Wells Fargo's filing of the initial Interpleader Complaint on September 25, 2013 and Amended Interpleader Complaint on October 25, 2013. Prior to the Court's initial conference on December 5, 2013, Battenkill contacted each party named in the Amended Interpleader Complaint to seek consent and also appeared at the December 5 conference to inform the Court of its intention to intervene. *See Equal Emp't Opportunity Comm'n v. Mavis Discount Tire*, No. 12 Civ. 0741 (KPF), 2013 WL 5434155, at *4 (S.D.N.Y. Sept. 30, 2013) (intervention timely where "the action was less than three months old, discovery had not yet begun, and Defendants had only recently filed their answer"); *Padilla v. Maersk Line, Ltd.*, No. 07 Civ. 3638(PKL)(THK), 2009 WL 3496877, at *3 (S.D.N.Y. Oct. 29, 2009) (generally, "[w]hen a case is in its early stages, a motion to intervene is timely"), *aff'd*, 721 F.3d 77 (2d Cir. 2013); *see also Mortg. Lenders Network, Inc. v. Rosenblum*, 218 F.R.D. 381, 383-84 (E.D.N.Y. 2003) (six-month delay in intervening did not prejudice existing parties).

Moreover, at the December 5 conference, counsel for Battenkill informed the Court that it would be prepared to "abide by whatever schedule is set for judgment on the pleadings or summary judgment" as contemplated by the existing parties and "will be prepared

8

to participate on whatever schedule is set." (Ex. C at 14:23 – 15:2.)  Thus, Wales has no basis to claim that it would be prejudiced in any way by Battenkill's intervention at this early stage of the litigation.  *See Equal Emp't Opportunity Comm'n v. Rekrem, Inc.*, 199 F.R.D. 526, 528 (S.D.N.Y. 2001) (intervention timely where motion made prior to discovery and while motions to dismiss were *sub judice*).  By contrast, Battenkill would be severely prejudiced if intervention is denied.  As discussed below, Battenkill has a substantial interest in the Disputed Funds and will have no way of protecting that interest if intervention is denied.  (*Infra* §§ I.B, I.C.)  Accordingly, Battenkill's motion should be deemed timely.

    **B.**  **Battenkill Has a Direct and Substantial Interest in the Interpleader Action**

    Battenkill has an interest sufficient to merit intervention as of right.  While there is no clear consensus as to what constitutes an "interest" under Rule 24(a)(2), this Circuit has embraced a "flexible" approach to determining whether a sufficient interest exists.  *See United States v. Hooker Chems. & Plastics Corp.*, 749 F.2d 968, 992 n.21 (2d Cir. 1984); *see also Conservation Law Found. of New England, Inc. v. Mosbacher*, 966 F.2d 39, 41-42 (1st Cir. 1992) (The Second Circuit has "adopted a liberal approach to intervention" whereby it "view[s] the interest test as a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process.") (citing *N.Y. Pub. Interest Research Grp., Inc. v. Regents of the Univ. of the State of N.Y.*, 516 F.2d 350, 352 (2d Cir. 1975)).  In order to permit intervention as of right, a claimed interest must be "'direct, substantial, and legally protectable.'"  *Bridgeport Guardians, Inc. v. Delmonte*, 602 F.3d 469, 473 (2d Cir. 2010) (citation omitted).

    Here, Battenkill has a direct, substantial and legally protectable interest in the outcome of this action for three separate reasons.  First, through the Reinsurance Agreement, Battenkill is obligated as Assured's reinsurer to indemnify Assured for 85% of all "Losses" paid

9

by Assured under its financial guaranty policy for the MARM 2007-3 Transaction.  (*Supra* pp. 5-6.)  If this Court determines that the Disputed Funds should be paid to the non-insured senior certificateholders rather than to Assured, Battenkill will be required to pay 85% of those losses incurred by Assured under the Reinsurance Agreement, thus providing Battenkill with an interest that "'arise[s] out of the same transaction or occurrence that is the subject of the instant case.'" *N.J. Carpenters Health Fund v. Residential Capital, LLC*, No. 08 CV 8781(HB), 08 CV 5093(HB), 2010 WL 5222127, at *4 (S.D.N.Y. Dec. 22, 2010) (citation omitted); *see also Cole Mech. Corp. v. Nat'l Grange Mut. Ins. Co.*, No. 06 Civ. 2875(LAK)(HBP), 2007 WL 2593000, at *4 (S.D.N.Y. Sept. 7, 2007) (Pitman, M.J.) ("[G]iven [intervenor's] obligation to indemnify [defendant], [intervenor] has a clear interest in the outcome of the litigation that may be impaired by the outcome of the litigation.").[4]

Additionally, under the Reinsurance Agreement, Battenkill is entitled to receive at least 85% of the Disputed Funds if the Court determines that these funds should be paid to Assured.  (*Supra* p. 5.)  The Reinsurance Agreement requires Assured to deposit into a supplemental trust in which Battenkill has an interest between 85% and 100% of all "Reimbursement Amounts," which include "all cash amounts including those paid from 'excess spread'" such as the Disputed Funds currently held in escrow by Wells Fargo.  (*Supra* p. 5; Ex. B at 4, 7.)  Thus, regardless of whether Assured's interpretation of the PSA prevails in this action or is rejected, Battenkill's interests in the MARM 2007-3 Transaction will be affected.

---

[4] Battenkill submits that such obligations apply only with respect to the Disputed Funds placed into escrow by Wells Fargo, and that Battenkill would not be liable under the Reinsurance Agreement for the clawback of any payments previously received by Assured prior to the execution of the Reinsurance Agreement.  Battenkill understands that Assured disagrees with its interpretation of the Reinsurance Agreement.

Finally, through the Reinsurance Agreement, Assured assigned "rights and remedies" to Battenkill regarding the Reimbursement Amounts. (*Supra* p. 5.) By virtue of this assignment, Battenkill currently has an interest in the very property that comprises the subject matter of this dispute. *See Mutual Fire, Marine & Inland Ins. Co. v. Adler*, 726 F. Supp. 478, 481 (S.D.N.Y. 1989) (holding that assignee's intervention satisfied test for intervention as of right); *Mortg. Lenders Network*, 218 F.R.D. at 383-84 (allowing intervention as of right where named party assigned to proposed intervenor "all of its rights" to loans that were the subject of action).[5] Accordingly, Battenkill satisfies the interest requirement of Rule 24(a).

### C. Without Intervention, Battenkill's Interests in the Interpleader Action Will Be Impaired

Battenkill's interests will be impaired absent intervention. Disposition of the Disputed Funds will, as a practical matter, impair Battenkill's ability to obtain them and bind Battenkill to the Court's interpretation of the PSA's waterfall. *See N.Y. Pub. Interest Research Grp., Inc. v. Regents of the Univ. of the State of N.Y.*, 516 F.2d 350, 352 (2d Cir. 1975) (observing that "possible stare decisis effect of an adverse decision" on subsequent litigation militates in favor of intervention); *SEC v. Everest Mgmt. Corp.*, 475 F.2d 1236, 1239 n.4 (2d Cir.

---

[5] *See also Pure Oil Co. v. Ross*, 170 F.2d 651, 653 (7th Cir. 1948) (allowing intervention of assignee of "right, title and interest" in the funds at issue and observing that "[t]he general rule is that all persons materially interested, either legally or beneficially, in the subject matter of a suit[] are to be made parties to it"); *Honeywell, Inc. v. Sperry Rand Corp.*, 54 F.R.D. 593, 595 (D. Minn. 1971) ("The intervention of [the assignee of all rights] assumes the posture of an *in rem* action and comes squarely within the language 'claims an interest relating to the property . . . which is the subject of the action,' contained in Rule 24(a)(2)" (second alteration in original)), *aff'd sub nom. Iowa State Univ. Research Found. v. Honeywell, Inc.*, 459 F.2d 447 (8th Cir. 1972).

1972) (risk of collateral estoppel "may supply the practical disadvantage that is required for intervention").[6]

### D. Battenkill's Interests Are Not Adequately Represented By the Existing Parties

Battenkill's interests in this litigation are not adequately represented by the existing parties. "In general, Rule 24(a)(2) requires a showing that the representation of [intervenor's] interest 'may be' inadequate, and that the burden of making that showing is 'minimal.'" *Sackman v. Liggett Grp., Inc.*, 167 F.R.D. 6, 22 (E.D.N.Y. 1996) (quoting *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972)). However, "where the same overall objective exists for the putative intervenor and one party in the lawsuit, the applicant must overcome the presumption of adequate representation." *Id.*

Wales' counsel has indicated that it will not consent to Battenkill's intervention because it believes that Assured alone is a sufficient advocate of Battenkill's position. (Musoff Decl. ¶ 14.) In essence, Wales' view is that the parties to this interpleader action should be determined solely according to whom Wells Fargo happened to name in the AIC. Limiting the parties in such a manner, however, would be unfair given that Assured has retained a 15% stake in the Disputed Funds, whereas Battenkill holds an 85% stake by virtue of the Reinsurance Agreement. Thus, while the positions of Battenkill and Assured are notionally aligned at this stage of the litigation, Assured has a dramatically smaller interest in the outcome and thus Battenkill must intervene in the action now in order to fully safeguard its rights. *See Cole*, 2007 WL 2593000, at *3-4 (indemnitor entitled to intervene as of right where it would be "liable for

---

[6] *See also Reassure Am. Life Ins. Co. v. Shomers*, 265 F.R.D. 672, 675 (S.D. Fla. 2010) ("[A] judgment holding that [interpleader party] is not entitled to the proceeds of the insurance policy would impede the [intervenor's] ability to prove otherwise" in separate litigation.) *aff'd sub nom. F.T.C. v. Shomers*, 463 F. App'x 828 (11th Cir. 2012).

any sums paid by [defendant] to settle the matter even if there is a viable defense to [plaintiff's] claims"); *Cohen v. Republic of the Philippines*, 146 F.R.D. 90, 92 (S.D.N.Y. 1993) (granting intervention where settlement by existing parties would defeat intervenor's interests); *Select Retrieval, LLC v. ABT Elec.*, No. 11 C 03752, 2013 WL 6576861, at *3 (N.D. Ill. Dec. 13, 2013) (no adequacy of representation despite fact that parties "share the goal of defeating the infringement claims" where existing parties were indemnified and thus "their stake in the outcome – and arguably their incentive to mount a vigorous defense – is lessened").[7]

Finally, in the event that Wales' proposed interpretation of the PSA prevails, the interests of Battenkill and Assured may diverge to the extent Assured is ordered to repay other funds previously received since 2007, insofar as the parties may have differing views of their respective liability for such payments. (Musoff Decl. ¶ 15.) Given this potential divergence of interest, Battenkill should be allowed to intervene and should not be forced to rely solely on Assured (or any other existing party to this action) to represent its interests. *See N.Y. Pub. Interest Research Grp.*, 516 F.2d at 352; *Consol. Edison, Inc. v. Ne. Utils.*, No. 01 Civ. 1893(JGK), 2004 WL 35445, at *6 (S.D.N.Y. Jan. 7, 2004) ("While [existing party] claims that it and [intervenor] have the same ultimate objective in proving that Con Ed breached the Merger Agreement, [existing party] and [intervenor] have conflicting objectives in determining who should receive any damages."); *Home Ins. Co. v. Liberty Mut. Ins. Co.*, No. 87 Civ. 0675(SWK), 1990 WL 188925, at *6 (S.D.N.Y. Nov. 20, 1999) ("Home is correct in its argument that Liberty and Penney share a common interest in defeating Home's recovery. However, . . . . a potential

---

[7] *Cf. Shawnee Fire Ins. Co. v. Cosgrove*, 116 P. 819, 820 (1911), *aff'd on reh'g.*, 121 P. 488 (1912) (insurer who indemnified insured but made no effort to intervene in insured's action against tortfeasor or to look after its own interest in known litigation could not hold insured responsible for settling the case as the insured thought best).

conflict of interest between Liberty and Penney, which arises out of Liberty's reservation of rights, supports intervention.") (citing *Oneida Indian Nation of Wisc. v. New York*, 732 F.2d 259 (2d Cir. 1974) (allowing intervention where the interests of the parties and proposed intervenor *potentially* diverge)); *Maryland Cas. Co. v. W.R. Grace & Co.*, No. 88 Civ. 2613(JSM), 1996 U.S. Dist. LEXIS 898, at *4-5 (S.D.N.Y. Jan. 30, 1996) (insurer's interests not adequately represented by similarly-situated insurers where "the insurers' 'goal of escaping liability . . . does not eclipse the equally compelling interest each has to avoid liability to one another'").[8]

## II. ALTERNATIVELY, BATTENKILL SHOULD BE ALLOWED TO PERMISSIVELY INTERVENE UNDER RULE 24(b)

Even if Battenkill is not permitted to intervene as of right under Rule 24(a), the Court nevertheless should allow Battenkill to permissively intervene under Rule 24(b). An applicant may intervene permissively if "upon timely application," its "claim or defense and the main action have a question of law or fact in common." Fed. R. Civ. P. 24(b). In addition, "[i]n exercising its discretion" to grant permissive intervention, "the court [shall] consider whether the intervention will unduly delay or prejudice the adjudication of the [rights of the original parties]." *Id.* The rule is "to be liberally construed in favor of intervention." *U.S. Polo Ass'n, Inc. v. PRL USA Holdings, Inc.*, No. 09 Civ. 9476, 2013 WL 837565, at *7 (S.D.N.Y. Mar. 6, 2013); *German v. Fed. Home Loan Mortg. Corp.*, 896 F. Supp. 1385, 1391 (S.D.N.Y. 1995). "'A district court has broad discretion in deciding whether to grant permissive intervention.'" *Louis Berger Grp., Inc. v. State Bank of India*, 802 F. Supp. 2d 482, 488 (S.D.N.Y. 2011).

---

[8] For this reason, should the Court deny Battenkill's motion to intervene at this time, Battenkill respectfully requests, at a minimum, that such denial be without prejudice to intervene if necessary in any postjudgment remedy portion of the litigation. *See, e.g.*, *Spirt v. Teachers' Ins. & Annuity Ass'n*, 93 F.R.D. 627, 637 (S.D.N.Y. 1982), *aff'd in part and rev'd in part on other grounds*, 691 F.2d 1054 (2d Cir. 1982), *vacated on other grounds*, 463 U.S. 1223 (1983).

Here, the Court should allow Battenkill to permissively intervene given its strong interests in the outcome of the action (*supra* § I.B) and because intervention will not prejudice any of the existing parties or unduly delay the proceedings (*supra* § I.A). Such a result is particularly appropriate here given the interpleader nature of this action, which is specifically designed to adjudicate the respective rights of *all* parties with interests in the Disputed Funds. *See McDonnell*, 2001 WL 1020460, at *1. Allowing Battenkill to intervene to protect its interests will promote these goals while "significantly contribut[ing] to [the] full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal question presented." *Diversified Grp., Inc. v. Daugerdas*, 217 F.R.D. 152, 157 (S.D.N.Y. 2003) (citation omitted).

## **CONCLUSION**

For the foregoing reasons, Battenkill's motion to intervene in the interpleader action should be granted.

Dated:   New York, New York
         January 10, 2014

                                                    Respectfully submitted,

                                                     /s/ Scott D. Musoff
                                                    Jay B. Kasner
                                                    Scott D. Musoff
                                                    Alexander C. Drylewski
                                                    SKADDEN, ARPS, SLATE,
                                                      MEAGHER & FLOM LLP
                                                    Four Times Square
                                                    New York, New York 10036
                                                    (212) 735-3000

                                                    *Attorneys for Battenkill Insurance
                                                      Company, LLC*