UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

| | |
|---|---|
| WELLS FARGO BANK, N.A., solely in its capacity as Trust Administrator of MASTR Adjustable Rate Mortgages Trust 2007-3, | : : : : |
| Interpleader Plaintiff, | : 13-cv-6781 (PGG)(HP) : |
| - against - | : **ECF Case** : |
| | : **Electronically Filed** : |
| WALES LLC, ASSURED GUARANTY MUNICIPAL CORP. (f/k/a FINANCIAL SECURITY ASSURANCE INC.), THE DEPOSITORY TRUST COMPANY, CEDE & CO., as registered Holder of certain Certificates and nominee name of the Depository Trust Company, and DOES 1 through 100, beneficial owners of certain Certificates, | : : : : : : : : : |
| Interpleader Defendants. | : |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

## DECLARATION OF SCOTT D. MUSOFF IN SUPPORT OF
## BATTENKILL INSURANCE COMPANY, INC.'S MOTION TO INTERVENE

Scott D. Musoff hereby declares as follows:

1. I am a member of the Bar of this Court and the firm of Skadden, Arps, Slate, Meagher & Flom LLP, counsel for Battenkill Insurance Company, LLC ("Battenkill").

2. I respectfully submit this declaration in support of Battenkill's Motion to Intervene in the above-captioned interpleader action ("Interpleader Action"). Battenkill's proposed Crossclaim and Answer to the Amended Interpleader Complaint is attached hereto as Exhibit A.

3. On May 6, 2013, prior to the commencement of the Interpleader Action, Assured Guaranty Municipal Corp. ("Assured") and UBS Real Estate Securities Inc. ("UBS RESI"), among other parties, entered into an agreement which resolved certain litigation claims asserted

by Assured concerning three mortgage-backed securitizations issued by UBS RESI, including the MASTR Adjustable Rate Mortgages Trust 2007-3 ("MARM 2007-3") securitization transaction.

4. In connection with this agreement, UBS RESI agreed to create and license Battenkill to enter into a related Quota Share Reinsurance Agreement ("Reinsurance Agreement") with Assured. (Ex. B.) Battenkill, an indirect wholly-owned subsidiary of UBS RESI, was organized as a limited liability company on April 22, 2013 and authorized as a Vermont domiciled pure captive insurance company on June 6, 2013. On July 11, 2013, Battenkill entered into the Reinsurance Agreement with Assured covering *inter alia* the MARM 2007-3 Transaction. (Ex. B at 1; *see also id.* Schedule A.)

5. Simultaneously with the Reinsurance Agreement, the parties also entered into two trust agreements pursuant to which Battenkill agreed to collateralize its obligations to Assured.

6. Under Section 2.2 of the Reinsurance Agreement, Battenkill agreed to indemnify Assured for "the Quota Share of the Losses paid by [Assured] after the Initial Calculation Date." (*Id.* at 6.) The Reinsurance Agreement defines the "Quota Share" as 85% of such "Losses," which include "amounts paid by [Assured] in cash in settlement or satisfaction of claims under the Covered Policies," which include Policy No. 51834-N, the financial guaranty policy provided by Assured with respect to the MARM 2007-3 Transaction. (*Id.* at 3, 4, 6, Schedule B.)

7. In addition to obligating Battenkill to pay 85% of all "Losses" actually paid by Assured under its financial guaranty policy for the MARM 2007-3 Transaction, the Reinsurance Agreement also provides Battenkill with a financial and legal interest in certain recoveries of excess interest funds paid to Assured. Specifically, under Section 4.1(a) of the Reinsurance Agreement, Assured is required to deposit into a supplemental trust account – which was

established pursuant to a separate trust agreement entered into in connection with the Reinsurance Agreement – at least "85% of the amount of each Reimbursement Amount" it receives. (*Id.* at 7.)

8.  Assured is currently obligated to deposit 85% of all Reimbursement Amounts into the supplemental trust. If Assured's aggregate net losses fall below a predetermined amount set forth in the Reinsurance Agreement, Assured will be required to deposit 100% of all Reimbursement Amounts into the supplemental trust. (*Id.* at 7.)

9.  Finally, Section 4.1(e) of the Reinsurance Agreement provides that Assured "hereby assigns to [Battenkill] all of [Assured's] rights and remedies with respect to the Reimbursement Amounts pursuant to the terms and subject to the conditions set forth in this Agreement." (*Id.* at 9.) The Reinsurance Agreement also states that the assignment of Assured's rights and remedies concerning Reimbursement Amounts "does not encompass and shall in no way affect, increase or diminish" Assured's interest in "receiv[ing] payment of its share of the Reimbursement Amounts in accordance with Section 4.1(a)." (*Id.*)

10.  The Interpleader Action arises out of a dispute between Assured, as certificate insurer for the MARM 2007-3 Transaction, and certain non-insured senior certificateholders, led by Wales LLC ("Wales") regarding the proper disposition of certain excess interest funds pursuant to the terms of the MARM 2007-3 pooling and servicing agreement ("PSA"). On October 25, 2013, Wells Fargo Bank, N.A. ("Wells Fargo") filed the Amended Interpleader Complaint in this action, naming Assured, Wales LLC ("Wales"), The Depository Trust Company, CEDE & Co. and Does 1 through 100 as interpleader defendants.

11.  Approximately one month later, in early December 2013, Battenkill reached out to all parties named in the Amended Interpleader Complaint to seek their consent to Battenkill's

intervention in the Interpleader Action.

12. Wells Fargo, Assured, The Depository Trust Company and CEDE & Co. consented to intervention. Wales requested permission to review the Reinsurance Agreement prior to determining whether it would give its consent, to which Battenkill agreed.

13. On December 5, 2013, this Court held a preliminary conference with all parties to the Interpleader Action, at which Battenkill appeared and informed the Court of its intention to intervene. (Ex. C at 3.)

14. On December 23, 2013, Wales informed Battenkill that it would not consent to its intervention based on the Reinsurance Agreement and stated that, in its view, Assured was capable of adequately representing Battenkill's interests in the action, thus necessitating Battenkill's instant motion to intervene.

15. In the event that Wales' proposed interpretation of the MARM 2007-3 PSA were to prevail, the interests of Battenkill and Assured may diverge to the extent Assured is ordered to repay other funds previously received since 2007, insofar as the parties may have differing views of their respective liability for such payments.

16. Battenkill believes that its obligations under the Reinsurance Agreement apply only with respect to the Disputed Funds placed into escrow by Wells Fargo, and that Battenkill would not be liable under the Reinsurance Agreement for the clawback of any payments previously received by Assured prior to the execution of the Reinsurance Agreement. Battenkill understands that Assured disagrees with its interpretation of the Reinsurance Agreement.

17. Attached hereto as Exhibits A through C are true and correct copies of the following documents, which are referenced herein and/or in the accompanying Memorandum of Law in Support of Battenkill's Motion to Intervene:

| Exhibit | Description |
|---|---|
| A | Proposed Answer of Battenkill Insurance Company, LLC to the Amended Interpleader Complaint and Crossclaim, dated January 10, 2014. |
| B | Quota Share Reinsurance Agreement, by and between Assured Guaranty Municipal Corp. and Battenkill Insurance Company, LLC, dated as of July 11, 2013. |
| C | Excerpted Transcript of Proceedings in *Wells Fargo Bank, N.A. v. Wales LLC, et al.*, 13-cv-6781(PGG) (December 5, 2013). |

I declare under penalty of perjury that the foregoing is true and correct.

Executed on January 10, 2014.

                                                        */s/ Scott D. Musoff*
                                                        Scott D. Musoff