UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

| | |
|---|---|
| WELLS FARGO BANK, N.A., solely in its capacity as Trust Administrator of MASTR Adjustable Rate Mortgages Trust 2007-3, | : <br> : <br> : <br> :    13-cv-6781 (PGG)(HP) |
| Interpleader Plaintiff, | : <br> : |
| - against - | :    **ECF Case** <br> : <br> :    **Electronically Filed** |
| WALES LLC, ASSURED GUARANTY MUNICIPAL CORP. (f/k/a FINANCIAL SECURITY ASSURANCE INC.), THE DEPOSITORY TRUST COMPANY, CEDE & CO., as registered Holder of certain Certificates and nominee name of the Depository Trust Company, and DOES 1 through 100, beneficial owners of certain Certificates, | : <br> : <br> : <br> : <br> : <br> : <br> : <br> : |
| Interpleader Defendants. | : <br> : |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

# BATTENKILL INSURANCE COMPANY, LLC'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION TO INTERVENE

                                          SKADDEN, ARPS, SLATE,
                                            MEAGHER & FLOM LLP
                                            Jay B. Kasner
                                            Scott D. Musoff
                                            Alexander C. Drylewski
                                            Four Times Square
                                            New York, New York 10036
                                            Phone: (212) 735-3000

                                            *Attorneys for Battenkill Insurance*
                                               *Company, LLC*

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................................................1

ARGUMENT ...................................................................................................................................3

I. PERMISSIVE INTERVENTION IS WARRANTED..........................................................3

    A. Battenkill's Motion Will Not Cause Any Prejudice or Delay ................................4

    B. Battenkill Will Uniquely Contribute to the Interpleader Action ............................6

II. BATTENKILL SATISFIES THE REQUIREMENTS TO INTERVENE AS OF RIGHT .................................................................................................................................7

    A. Battenkill Has a Direct and Substantial Interest in this Litigation that Will Be Impaired Without Intervention ............................................................................7

    B. Battenkill's Interests are Not Adequately Represented ..........................................9

CONCLUSION ................................................................................................................................10

…

# **TABLE OF AUTHORITIES**

## **CASES**

*American Lung Association v. Reilly*,
   141 F.R.D. 19 (E.D.N.Y. 1992) ............................................................................................6

*Aristocrat Leisure Ltd. v. Deutsche Bank Trust Co. Americas*,
   262 F.R.D. 348 (S.D.N.Y. 2009) ..........................................................................................3

*Butler, Fitzgerald & Potter v. Sequa Corp.*,
   250 F.3d 171 (2d Cir. 2001) ...............................................................................................10

*Callon Petroleum Co. v. National Indemnity Co.*,
   No. 06-CV-0573 (JS)(ARL), 2010 WL 5437210 (E.D.N.Y. Dec. 23, 2010) .......................9

*Citizens Against Casino Gambling in Erie County v. Hogen*,
   417 F. App'x 49 (2d Cir. 2011) ............................................................................................6

*Cole Mechanical Corp. v. National Grange Mutual Insurance Co.*,
   No. 06 Civ. 2875 (LAK)(HBP), 2007 WL 2593000 (S.D.N.Y. Sept. 7, 2007) ....................9

*Degrafinreid v. Ricks*,
   417 F. Supp. 2d 403 (S.D.N.Y. 2006) ...............................................................................3, 4

*Disability Advocates, Inc. v. Paterson*,
   No. 03-CV-3209 (NGG), 2009 WL 4506301 (E.D.N.Y. Nov. 23, 2009) ............................4

*Drum Major Music Entertainment Inc. v. Young Money Entertainment, LLC*,
   No. 11 Civ. 1980 (LBS), 2012 WL 208107 (S.D.N.Y. Jan. 18, 2012) ...............................10

*Equal Employment Opportunity Commission v. Rekrem, Inc.*,
   199 F.R.D. 526 (S.D.N.Y. 2001) ..........................................................................................4

*Miller v. Silbermann*,
   832 F. Supp. 663 (S.D.N.Y. 1993) ...................................................................................4, 7

*Mitchell v. Faulkner*,
   No. 07 Civ. 2318 (DAB), 2009 WL 585882 (S.D.N.Y. Mar. 5, 2009) ..........................6, 10

*New Jersey Carpenters Health Fund v. Residential Capital, LLC*,
   Nos. 08 CV 8781 (HB), 08 CV 5093 (HB), 2010 WL 5222127
   (S.D.N.Y. Dec. 22, 2010) .....................................................................................................8

*Restor-A-Dent Dental Laboratories, Inc. v. Certified Alloy Products, Inc.*,
   725 F.2d 871 (2d Cir. 1984) .............................................................................................8, 9

*Rosenshein v. Kleban*,
    918 F. Supp. 98 (S.D.N.Y. 1996) ............................................................................................5

*Ross v. Marshall*,
    426 F.3d 745 (5th Cir. 2005) ...................................................................................................9

*Rux v. ABN-Amro Bank N.V.*,
    No. 08 Civ. 6588 (AKH), 2009 WL 1403886 (S.D.N.Y. May 19, 2009) .......................5, 6

*Salomon Smith Barney, Inc. v. McDonnell*,
    No. 01 CIV 2874 RO, 2001 WL 1020460 (S.D.N.Y. Sept. 5, 2001) ..................................6

*United States Polo Ass'n, Inc. v. PRL USA Holdings, Inc.*,
    No. 09 Civ. 9476, 2013 WL 837565 (S.D.N.Y. Mar. 6, 2013) ...........................................3

*United States v. Hooker Chemicals & Plastics Corp.*,
    749 F.2d 968 (2d Cir. 1984).....................................................................................................7

*Wells Fargo Financial Leasing, Inc. v. Griffin*,
    No. 5:13-CV-00075-M, 2014 WL 241778 (W.D. Ky. Jan. 22, 2014)..................................5

*Williston v. Feliz*,
    No. 04 Civ. 4454 (RWS), 2005 WL 1669008 (S.D.N.Y. July 14, 2005) ............................3

**OTHER AUTHORITIES**

Fed. R. Civ. P. 24 ................................................................................................................ *passim*

Proposed Intervenor Battenkill[1] respectfully submits this reply memorandum of law in further support of its motion to intervene pursuant to Federal Rule of Civil Procedure 24.

## PRELIMINARY STATEMENT

Nothing in Wales' opposition brief ("Opposition" or "Opp. Br.") undermines Battenkill's entitlement to intervene in this interpleader action to protect its direct and significant interests in the Disputed Funds. Permissive intervention under Rule 24(b) is particularly appropriate, as Wales does not dispute that Battenkill's motion was timely and cannot offer any convincing argument as to how the parties would be prejudiced by Battenkill's involvement at this early stage of the litigation. (*Infra* § I.A.) While Wales contends that Battenkill will serve "duplicative" submissions, it does not cite any case to support its view that this constitutes prejudice for purposes of intervention analysis. Indeed, with the sole exception of Wales, every other named party has expressly consented to Battenkill's intervention, none of whom share Wales' concerns about prejudice or duplication. Wales further ignores that Battenkill is the wholly-owned subsidiary of UBS RESI – *i.e.*, the party that helped draft the PSA and negotiate its terms – and entered into the Reinsurance Agreement based on its understanding of the parties' interpretation of the PSA, including the very same waterfall provisions that are now in dispute. Battenkill thus offers a perspective that may be uniquely helpful to these proceedings.

Wales' argument that Battenkill threatens to inject "collateral issues" that will delay the proceeding is flatly inconsistent with its earlier contention that Battenkill's submissions will be "duplicative" of those of Assured, and also mischaracterizes the issues Battenkill raises. Questions as to the re-distribution of funds previously paid to Assured necessarily would not

---

[1] Unless otherwise indicated, all capitalized terms shall have the same meanings ascribed to them in Battenkill's opening Memorandum of Law ("Battenkill Br.").

1

arise unless and until the Court issues an opinion favoring Wales' interpretation of the PSA. Wales thus cannot be "prejudiced" by such issues in any way during this initial phase of the proceeding.

Battenkill also satisfies the requirements for intervention as of right under Rule 24(a). (*Infra* § II.) It is undisputed that Battenkill's motion is timely. Battenkill also has direct and substantial interests in the proceeding, the resolution of which will affect those interests. (*Infra* § II.A.) Wales' argument that Battenkill's interests are "contingent" is incorrect. Through the Reinsurance Agreement, Battenkill has a *direct* 85% interest in the Disputed Funds that will be significantly affected *regardless* of this action's outcome. Moreover, the Reinsurance Agreement states that Assured assigned to Battenkill "rights and remedies" with respect to the Disputed Funds, and Wales does not even address – let alone distinguish – the numerous cases cited by Battenkill which hold that such an assignment creates a direct and legally protectable interest for intervention purposes.

Finally, Wales' argument that Battenkill's interests are already adequately represented ignores that Battenkill's stake in the Disputed Funds is far greater than that of Assured and may diverge in significant ways. (*Infra* § II.B.) Wales' cited cases do not address the situation where, as here, the proposed intervenor's ultimate economic interests significantly outweigh those of the named party. Wales also does not address the fact that this is an interpleader action, the specific design of which is to adjudicate the respective rights of all interested parties in a single, efficient proceeding. Under Wales' view, an interpleader action with two potential outcomes should only ever have two parties – one advocating for each side – and those parties should be determined based solely upon who was named in the original complaint. This position – which is more likely motivated by Wales' desire to minimize those

parties who do not share its interpretation of the PSA – undermines the purpose of interpleader actions and would prevent Battenkill from acting to protect its own legally cognizable interests. Indeed, the very nature of an interpleader proceeding also makes intervention particularly appropriate here, where the proceeding is specifically intended to take into account the competing views of interested parties.

## ARGUMENT

I. **PERMISSIVE INTERVENTION IS WARRANTED**

Permissive intervention under Rule 24(b) is particularly appropriate here. (Battenkill Br. 14-15); *U.S. Polo Ass'n, Inc. v. PRL USA Holdings, Inc.*, 2013 WL 837565, at *7 (S.D.N.Y. Mar. 6, 2013) ("While [intervenor] may have an absolute right of intervention, the issue need not be reached because permissive intervention is warranted . . . ."). Under Rule 24(b), upon timely motion, a court may permit anyone to intervene who "has a claim or defense that shares with the main action a common question of law or fact," so long as intervention will not "unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(1), (3); *U.S. Polo Ass'n*, 2013 WL 837565, at *7. Rule 24(b) "is to be liberally construed in favor of intervention." *U.S. Polo Ass'n*, 2013 WL 837565, at *7; *Williston v. Feliz*, 2005 WL 1669008, at *1 (S.D.N.Y. July 14, 2005).

While Wales contends that "the same four factors are considered in determining a motion for permissive intervention under Rule 24(b) as an application for intervention as of right under Rule 24(a)," (Opp. Br. 8), "[t]he principal guide in deciding whether to grant permissive intervention is 'whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties,'" and courts routinely permit intervention under Rule 24(b) where the requirements of Rule 24(a) have not strictly been met. *Aristocrat Leisure Ltd. v. Deutsche Bank Trust Co. Americas*, 262 F.R.D. 348, 351 n.3 (S.D.N.Y. 2009) (quoting *United States v.*

3

*Pitney Bowes, Inc.*, 25 F.3d 66, 73 (2d Cir. 1994)); *see also Degrafinreid v. Ricks*, 417 F. Supp. 2d 403, 407-08 (S.D.N.Y. 2006) ("Rule 24(b) 'plainly dispenses with any requirement that the intervenor shall have a direct personal or pecuniary interest in the subject of the litigation.'") (quoting *Diamond v. Charles*, 476 U.S. 54, 77 (1986)); *Miller v. Silbermann*, 832 F. Supp. 663, 673-74 (S.D.N.Y. 1993) (granting permissive intervention even though intervenor's interests were adequately represented).[2]  Here, Wales does not dispute that Battenkill's motion is timely, and furthermore, intervention would not cause any delay or prejudice to the existing parties.

### A. Battenkill's Motion Will Not Cause Any Prejudice or Delay

Wales' contention that "[t]he named parties will undoubtedly suffer delay and prejudice if Battenkill were to intervene" (Opp. Br. 8) is unsupportable.  It bears emphasis that, other than Wales, every named party to this action has expressly consented to Battenkill's intervention – a fact that Wales does not address.  (Battenkill Br. 6.)  In fact, Battenkill has agreed to abide by whatever briefing and discovery schedule is agreed upon by the parties and set by the Court.  (Battenkill Br. 9-10); *Disability Advocates, Inc. v. Paterson*, 2009 WL 4506301, at *2 (E.D.N.Y. Nov. 23, 2009) (no prejudice where intervenor "seeks no extensions of the briefing schedule").  Moreover, this action is still in its early stages and no discovery or motion practice has yet taken place.  *See Degrafinreid*, 417 F. Supp. 2d at 408 (no prejudice to existing parties where "discovery that will proceed on the remaining claims is substantially similar" and thus "will not delay the litigation"); *Equal Emp't Opportunity Comm'n v. Rekrem, Inc.*, 199 F.R.D. 526, 528 (S.D.N.Y. 2001).

While Wales' complains that it will suffer prejudice because Battenkill will "file or serve duplicative pleadings, motions or discovery as Assured" (Opp. Br. 9), it does not cite

---

[2] In any event, Battenkill has satisfied each of the requirements of Rule 24(a).  (*See infra* § II.)

4

any case to support its proposition that having to respond to additional pleadings, motions or discovery requests – whether duplicative or not – constitutes the type of prejudice necessary to deny intervention.  And to the contrary, courts have found that having to respond to an additional party is *not* prejudicial.  *See Rux v. ABN-Amro Bank N.V.*, 2009 WL 1403886, at *1 (S.D.N.Y. May 19, 2009) ("Respondents have made no convincing showing that either the fact or the timing of the Government's intervention will cause them to suffer any prejudice beyond the burden of opposing the Government's argument."); *Wells Fargo Fin. Leasing, Inc. v. Griffin*, 2014 WL 241778, at *5 (W.D. Ky. Jan. 22, 2014) ("Wells Fargo cannot claim prejudice simply because it will be required to respond to an additional party.").[3]  In fact, far from being prejudicial, similarities between Battenkill's and Assured's arguments would only serve to minimize any purported prejudice suffered by Wales, who presumably will only respond to such arguments once.  *See Rosenshein v. Kleban*, 918 F. Supp. 98, 106-07 (S.D.N.Y. 1996) (no prejudice where "discovery is in the relatively early stages and Hamden and BSC should be seeking similar information from defendants and advancing similar legal theories").

> Wales' further argument that Battenkill will inject new collateral issues into this litigation (Opp. Br. 9) is similarly unavailing.  As an initial matter, this argument is contradicted by its earlier argument, made just a page earlier in the Opposition, that Battenkill will offer only "duplicative" submissions.  In any event, the "private repayment dispute" to which Wales refers would only arise if its proposed interpretation of the PSA were to prevail, and involves the redistribution of funds previously credited to Assured in such circumstances.  (Battenkill Br. 13.)

---

[3] While the district court in *American Lung Ass'n v. Reilly*, 141 F.R.D. 19, 23 (E.D.N.Y. 1992) (Opp. Br. 9) concluded that intervention "might unduly delay" the proceedings where plaintiff sought timely injunctive relief and "a speedy adjudication [was] required," here there is no similar necessity for "speedy adjudication" and, moreover, no showing that Battenkill's intervention would cause any delay.

This is not a "collateral issue" that will distract from the case, but is instead a subordinate issue that may never arise and, in any event, will not affect Wales in any way.

The cases Wales cites on this issue are inapposite. (Opp. Br. 9, 10.)  For example, in *Citizens Against Casino Gambling in Erie County v. Hogen*, 417 F. App'x 49 (2d Cir. 2011), the Second Circuit affirmed denial of intervention where the proposed intervenor raised several entirely unrelated questions regarding its sovereign immunity from civil discovery, as well as the scope of its limited waiver thereof, all of which threatened to unduly delay the proceedings.  *Id.* at 51.  Here, by contrast, Wales has not provided any explanation as to how Battenkill's intervention to protect its interests would introduce any delay whatsoever.  *See Rux*, 2009 WL 1403886, at *1.[4]  Just as significantly, none of the cases cited by Wales involved an interpleader action, where intervention "is particularly appropriate" given the express purpose of adjudicating the respective rights of all interested parties.  *See Salomon Smith Barney, Inc. v. McDonnell*, 2001 WL 1020460, at *1 (S.D.N.Y. Sept. 5, 2001).  Wales does not address these considerations.

      B.      <u>**Battenkill Will Uniquely Contribute to the Interpleader Action**</u>

Wales' contention that Battenkill "has not demonstrated that it has anything unique to offer to the interpleader action" (Opp. Br. 9-10) is incorrect as a factual matter.  Battenkill structured the Reinsurance Agreement – which gives it an 85% interest in the Disputed Funds – in accordance with its understanding as to the proper interpretation of the MARM 2007-3 waterfall provisions.  That understanding was based in part upon Battenkill's close corporate affiliation with UBS RESI – the party that helped draft the MARM 2007-3 PSA and negotiated its terms.  (Musoff Decl. Ex. A ¶¶ 10, 21-23; Opp. Br. n.1.)  Battenkill stands ready to contribute

---

[4]  In *Mitchell v. Faulkner*, 2009 WL 585882 (S.D.N.Y. Mar. 5, 2009) (Opp. Br. 10), the district court denied permissive intervention because, unlike here, movants sought to bring a new claim that "does not share a question of law or fact in common with the main action."  *Id.* at *5.

that unique perspective to aid in the adjudication of this dispute. *Miller*, 832 F. Supp. at 673 (granting intervention where movants "raise[] the same legal questions as the defense of the named defendants" but "their knowledge and concern[] will greatly contribute to the Court's understanding of this case").

*United States v. Hooker Chemicals & Plastics Corp.*, 749 F.2d 968 (2d Cir. 1984), upon which Wales relies, is not to the contrary. (Opp. Br. 10.) There, the Second Circuit addressed whether the trial court abused its discretion by denying intervention *as of right* – it did not address permissive intervention under Rule 24(b). *Id.* at 982-93. Moreover, movants there sought to intervene in a government action, with the court observing that "[u]nder the *parens patriae* concept . . . a state that is a party to a suit involving a matter of sovereign interest is presumed to represent the interests of all its citizens." *Id.* at 984-85. Such considerations are not at issue here.[5]

## II.   BATTENKILL SATISFIES THE REQUIREMENTS TO INTERVENE AS OF RIGHT

### A.   Battenkill Has a Direct and Substantial Interest in this Litigation that Will Be Impaired Without Intervention

Battenkill has an interest in this interpleader matter that "arise[s] out of the same transaction and occurrence that is the subject of the instant case." *N.J. Carpenters Health Fund v. Residential Capital, LLC*, 2010 WL 5222127, at *4 (S.D.N.Y. Dec. 22, 2010); (Battenkill Br. 9-11).[6] Through the Reinsurance Agreement, Battenkill is obligated to indemnify Assured for 85%

---

[5] Wales also requests that the Court delay its grant of intervention until after the motion for judgment on the pleadings stage. (Opp. Br. n.6.) While it is within the Court's discretion to limit the scope of any intervention, Wales provides no more reason to impose such limitations as it does to deny intervention altogether.

[6] Wales does not dispute that Battenkill filed its motion to intervene in a timely manner. (Battenkill Br. 7-8.) Thus, this first requirement is satisfied.

of its Losses relating directly to the escrowed funds *and* is entitled to receive 85% of any funds recovered by Assured through this action. (*Id.*) Finally, Assured assigned "rights and remedies" to Battenkill regarding the Disputed Funds. (*Id.*)

Wales contends that Battenkill's interests are not sufficiently "direct" because they "depend[] on at least two contingencies: (i) the outcome of this interpleader action, and (ii) the resolution in its favor of a subsequent legal proceeding or negotiation interpreting the Reinsurance Agreement." (Opp. Br. 7.) This argument is without merit. Battenkill's interests in the escrowed funds will be affected by the adjudication of this interpleader action *regardless of the outcome*. Whether the Court adopts Wales' proposed interpretation of the PSA or that of Assured, Battenkill will be required to either forfeit or receive 85% of the Disputed Funds. Thus, Battenkill's interests are not contingent on an adverse ruling by this Court. There is also no second contingency because there is no secondary dispute: Assured does not contest Battenkill's economic interest in the escrowed funds. In addition, the Reinsurance Agreement provides for the assignment to Battenkill of "rights and remedies" with respect to all Reimbursement Amounts, including the Disputed Funds. (Battenkill Br. 5-6.) Battenkill's status as assignee is not contingent in any way on this proceeding and is sufficient to create a direct interest under Rule 24(a). (*See* Battenkill Br. 11 & n.5 (citing cases).)

Wales' reliance upon *Restor-A-Dent Dental Laboratories, Inc. v. Certified Alloy Products, Inc.*, 725 F.2d 871 (2d Cir. 1984), is misplaced. (Opp. Br. 7.) There, the Second Circuit held that an insurer's interest in intervening to propose interrogatories to the jury only in the event that the defendant lost at trial was not sufficiently direct because it "depends upon two contingencies" – a jury verdict for plaintiff and a finding in a subsequent action between intervenor and defendant that intervenor was not responsible for certain losses under the

insurance policy.  *Restor-A-Dent*, 725 F.2d at 875.  As already discussed, unlike the insurer in *Restor-A-Dent*, Battenkill's interests in this action are not contingent upon the outcome of the action or any secondary proceeding – rather, its rights concerning the Disputed Funds will be affected regardless of the interpretation of the PSA that the Court ultimately adopts.  In any event, courts have distinguished *Restor-A-Dent* where the intervenor's interest "depends on one contingency – a judgment in Plaintiff's favor – not a 'double contingency' or a 'sequence of events.'"  *Callon Petroleum Co. v. Nat'l Indem. Co.*, 2010 WL 5437210, at *3 (E.D.N.Y. Dec. 23, 2010); *see also Ross v. Marshall*, 426 F.3d 745, 759 (5th Cir. 2005).[7]  Moreover, *Restor-A-Dent* did not even address the situation where, as here, the proposed intervenor was assigned "rights and remedies" directly concerning the subject matter of the action.  Thus, Battenkill has demonstrated a direct and substantial interest.[8]

### B. Battenkill's Interests are Not Adequately Represented

Finally, while Wales argues that "Assured and Battenkill have an identical interest to vigorously litigate Assured's entitlement to the Disputed Funds" (Opp. Br. 4-5), it cannot deny that Battenkill's 85% interest in the Disputed Funds far outweighs Assured's 15% interest.[9]  Wales relies on cases purportedly showing that "[c]ourts routinely deny intervention where, just

---

[7] *Cf. Cole Mech. Corp. v. Nat'l Grange Mut. Ins. Co.*, 2007 WL 2593000, at *4 (S.D.N.Y. Sept. 7, 2007) (Pitman, M.J.) ("[G]iven [intervenor's] obligation to indemnify [defendant], [intervenor] has a clear interest in the outcome of the litigation" justifying intervention).

[8] In addition, a resolution of this action in Wales' favor would, as a practical matter, impede Battenkill's ability to protect its rights to the Disputed Funds since the Court will necessarily decide the proper interpretation of the PSA's waterfall provisions.  (Battenkill Br. 11.)

[9] While Wales argues that Battenkill has not shown "collusion, adversity of interest, nonfeasance, or incompetence" (Opp. Br. 4), the Second Circuit has held that while such evidence "may suffice to overcome the presumption of adequacy," it is "perhaps not an exhaustive list."  *Butler, Fitzgerald & Potter v. Sequa Corp.*, 250 F.3d 171, 180 (2d Cir. 2001).  In any event, Battenkill has demonstrated adversity of interest.  (Battenkill Br. 13.)

as here, the movant is entitled to a share of an existing party's recovery" (*id.* at 5), but not one of those cases involved a situation where, as here, the proposed intervenor's stake in the action vastly outweighed that of the party deemed to represent its interests. *See Drum Major Music Entm't Inc. v. Young Money Entm't, LLC*, 2012 WL 208107 (S.D.N.Y. Jan. 18, 2012) (intervenor held rights to 20% of recovery); *Mitchell*, 2009 WL 585882, at *1-2 (three movants and six existing plaintiffs owned equal interests in royalty payments).

By arguing that Battenkill may not intervene to protect its "rights and remedies," as well as its 85% interest, in the Disputed Funds due to the presence of Assured, Wales is effectively arguing that in an interpleader action such as this, Wells Fargo's decision regarding who to name in its interpleader complaint should trump all other considerations, regardless of whether there are other unnamed parties with greater relative interests in the outcome. Such a system would lead to inequitable results and defeat the very purpose of an interpleader, which is to adjudicate the respective rights of all parties concerning a common transaction or occurrence. By contrast, allowing Battenkill to intervene in this action would promote the fairness and judicial efficiency that interpleader actions are designed to facilitate.

## CONCLUSION

For the foregoing reasons and those stated in Battenkill's opening memorandum of law, Battenkill's motion to intervene under Rule 24 should be granted.

Dated: New York, New York
January 31, 2014

Respectfully submitted,

 /s/ Scott D. Musoff
Jay B. Kasner
Scott D. Musoff
Alexander C. Drylewski
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000

*Attorneys for Battenkill Insurance*
  *Company, LLC*