UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

WELLS FARGO BANK, N.A., solely in its
capacity as Trust Administrator of MASTR
Adjustable Rate Mortgages Trust 2007-3,

                     Interpleader Plaintiff,

         -against-

WALES LLC; ASSURED GUARANTY
MUNICIPAL CORP (f/k/a FINANCIAL
SECURITY ASSURANCE INC.); THE
DEPOSITORY TRUST COMPANY; CEDE
& CO., as registered holder of certain
certificates and nominee name of the
Depository Trust Company; and DOES 1
THROUGH 100, beneficial owners of certain
Certificates,

                     Interpleader Defendants.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9/19/14

**MEMORANDUM**
**OPINION & ORDER**

13 Civ. 6781 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

        In this interpleader action concerning the distribution of certain funds from a residential mortgage-backed securitization trust, Battenkill Insurance Company, LLC ("Battenkill") has moved to intervene. (Dkt. No. 49) Interpleader Defendant Wales LLC ("Wales") opposes Battenkill's motion. (Dkt. No. 54) For the reasons set forth below, Battenkill's motion will be denied.

## BACKGROUND

### I. THE INTERPLEADER ACTION

        On September 25, 2013, Wells Fargo Bank, N.A., filed the Interpleader Complaint in this action in its capacity as Trust Administrator of the MASTR Adjustable Rate Mortgages Trust 2007-3 ("MARM 2007-3 Trust" or the "Trust"), a residential mortgage-backed

securitization that was effective as of April 1, 2007. (Interpleader Cmplt. (Dkt. No. 1)) An Amended Interpleader Complaint was filed on October 25, 2013. (Am. Interpleader Cmplt. ("Am. Cmplt.") (Dkt. No. 15)) Wells Fargo seeks adjudication of the respective rights of the Interpleader Defendants – Wales, Assured Guaranty Municipal Corp. ("Assured"), the Depository Trust Company, Cede & Co., and Does 1 through 100 (unknown beneficial owners of certain certificates issued by the trust) – to certain trust proceeds. Interpleader Defendants Wales and Assured have asserted cross-claims against one another asserting rights to those proceeds. (Dkt. Nos. 25, 27) The Depository Trust Company and Cede & Co. represent that they are only nominal parties and do not intend to take an active role in this litigation. (Dkt. Nos. 29, 31)

The dispute between Wales and Assured arises out of competing interpretations of the priority-of-payment provisions (the "waterfall provisions") of the Trust's Pooling and Servicing Agreement (the "PSA") – the instrument that governs the Trust's issuance of certificates that entitle various classes of certificate holders to distributions of the Trust's proceeds. (Am. Cmplt. (Dkt. No. 15) ¶¶ 10-13, 17-34) At issue is whether, under the waterfall provisions, Assured – the financial guaranty insurer for certain classes of certificates issued by the Trust – has an independent right to reimbursement from the trust proceeds for previously-paid insurance claims, or whether it is only entitled to subrogation of the rights of the certificate holders whose certificates it insures. (Id. ¶¶ 14, 16-33) Prior to August 21, 2013, Wells Fargo distributed trust proceeds to Assured in a manner consistent with the first interpretation. (Id. ¶ 16) On August 21, 2013, however, representatives of certain certificate holders – including Wales – objected to these distributions, arguing that the latter interpretation should control. (Id. ¶ 17-18)

Wales has asserted counterclaims for a declaratory judgment, reformation of the Trust's governing documents, and unjust enrichment. (Wales Answer (Dkt. No. 25) ¶¶ 110-39) Wales contends that its interpretation of the waterfall provisions should govern distributions going forward, and that Assured should be ordered to pay back $47.7 million plus interest for payments it has received since March 25, 2011, as a result of Wells Fargo's allegedly incorrect interpretation of the waterfall provisions. (Id. ¶¶ 104, 108, 135-39)

Since this dispute arose, Wells Fargo has held the disputed trust proceeds in escrow. (Am. Cmplt. (Dkt. No. 15) ¶ 35)

## II. BATTENKILL'S MOTION TO INTERVENE[1]

### A. The Reinsurance Agreement

On May 6, 2013 – several months before this action was filed – Assured and UBS Real Estate Securities Inc. ("UBS") entered into an agreement to settle certain claims involving mortgage-backed securitizations issued by UBS. (Jan. 10, 2014 Musoff Decl. (Dkt. No. 51) ¶ 3) One of these securitizations is the MARM 2007-3 Trust. (Id.)

As part of its settlement with Assured, UBS agreed to create and license Battenkill as an indirect wholly-owned subsidiary of UBS. (Jan. 10, 2014 Musoff Decl. (Dkt. No. 51) ¶ 4) Assured and UBS further agreed that Battenkill would enter into a "Quota Share Reinsurance Agreement" with Assured (the "Reinsurance Agreement"). (Id.) On July 11, 2013, Battenkill and Assured entered into this reinsurance agreement. (Id. ¶ 5 & Ex. B ("Reinsurance Agreement"))

---

[1] "Putative intervene[o]rs' well-pleaded allegations are assumed to be true for the purposes of deciding a motion to inte[r]vene." Mitchell v. Faulkner, No. 07 Civ. 2318 (DAB), 2009 WL 585882, at *4 (S.D.N.Y. Mar. 5, 2009).

3

In the Reinsurance Agreement, Assured and Battenkill agree that Battenkill will provide Assured with reinsurance for several insurance policies issued by Assured (the "Covered Policies"), including the guaranty policy that Assured issued with respect to the MARM 2007-3 Trust. (Reinsurance Agreement (Dkt. No. 51-2) § 2.1 & Schedules A and B; Musoff Decl. (Dkt. No. 51) ¶ 6) Battenkill agrees to indemnify Assured for 85% of the amount that Assured pays in settlement or satisfaction of claims under the Covered Policies (subject to certain exclusions). (Id. §§ 1.1, 2.2) Accordingly, Battenkill claims that it "holds an 85% stake" in the Trust proceeds that are the subject of this litigation – "regardless of this action's outcome" – while Assured only "retain[s] a 15% stake." (Battenkill Br. (Dkt. No. 50) at 12; Battenkill Reply Br. (Dkt. No. 52) at 2 (emphasis omitted))

### B.     Motion to Intervene

The Amended Interpleader Complaint in this action was filed on October 25, 2013. (Dkt. No. 15) In early December 2013, Battenkill sought consent from all parties named in the Amended Interpleader Complaint to its intervention in this matter. (Musoff Decl. (Dkt. No. 51) ¶ 11) On December 5, 2013, Battenkill appeared at the initial conference in this matter and informed the Court of its intention to move to intervene. (See id., Ex. C ("Dec. 5, 2013 Tr.") at 3, 13-14) On December 23, 2013 – after reviewing Battenkill's Reinsurance Agreement with Assured – Wales notified Battenkill that it would not consent to Battenkill's intervention in this action. (Musoff Decl. (Dkt. No. 51) ¶¶ 12, 14)

On January 31, 2014, Battenkill moved to intervene under Fed. R. Civ. P. 24(a) or 24(b). (Dkt. No. 49) Only Wales has objected to Battenkill's motion. (Dkt. No. 54; see Battenkill Br. (Dkt. No. 50) at 1)

4

## DISCUSSION

### I. INTERVENTION AS OF RIGHT

#### A. Legal Standard

"Under Rule 24(a) of the Federal Rules of Civil Procedure[,] the Court must permit intervention by a non-party if it satisfies a four-part test." Mitchell v. Faulkner, No. 07 Civ. 2318 (DAB), 2009 WL 585882, at *4 (S.D.N.Y. Mar. 5, 2009).

> "[A]n applicant must (1) timely file an application, (2) show an interest in the action, (3) demonstrate that the interest may be impaired by the disposition of the action, and (4) show that the interest is not protected adequately by the parties to the action."

United States v. City of New York, 198 F.3d 360, 364 (2d Cir. 1999) (quoting Catanzano by Catanzano v. Wing, 103 F.3d 223, 232 (2d Cir. 1996) (internal quotations omitted)). ""'Failure to satisfy any one of these requirements is a sufficient ground to deny the application.'"" Id. (quoting Catanzano by Catanzano, 103 F.3d at 232 (quoting Farmland Dairies v. Comm'r of N.Y.S. Dep't of Agric. & Markets, 847 F.2d 1038, 1043 (2d Cir. 1988))).

#### B. Analysis

Wales does not dispute that Battenkill's motion to intervene is timely, but argues that the three remaining requirements for intervention as of right have not been satisfied. (See Wales Br. (Dkt. No. 54) at 4-8) In this regard, Wales's principal argument is that Battenkill's interests are already adequately represented by an existing party to this action – Assured. (See id. at 4-6) This Court agrees.

"In order to prevail [on a motion to intervene as of right], the Proposed Intervenor[ ] must . . . show that [its] interests are not adequately protected by an existing party. . . . Evidence of inadequate representation includes such factors as (1) collusion; (2) adversity of interest; (3) possible nonfeasance; or (4) incompetence." Miller v. Silbermann, 832

5

F. Supp. 663, 672 (S.D.N.Y. 1993). "The requirement . . . is satisfied if the applicant shows that representation of his interest 'may be' inadequate[.] . . . [T]he burden of making that showing should be treated as minimal." Trbovich v. United Mine Workers of Am., 404 U.S. 528, 538 n.10 (1972). "[T]he weight of the responsibility for demonstrating adequate representation [generally] fall[s] on the opposing party." Miller, 832 F. Supp. at 672.

"While the burden of demonstrating the inadequacy of representation is usually minimal, that burden may become 'more rigorous' if the proposed intervenor and an existing party share 'the same ultimate objective.'" Drum Major Music Entm't Inc. v. Young Money Entm't, LLC, No. 11 Civ. 1980 (LBS), 2012 WL 208107, at *1 (S.D.N.Y. Jan. 18, 2012) (quoting Butler, Fitzgerald & Potter v. Sequa Corp., 250 F.3d 171, 179 (2d Cir. 2001)) (internal citation omitted); see also Gulino v. Bd. of Educ., No. 96 CV 08414 (KMW), 2009 WL 2972997, at *3 (S.D.N.Y. Sept. 17, 2009) (same). "Where such an identity of interests exists, the proposed intervenor must rebut the presumption of adequate representation by the existing party." Drum Major Music Entm't Inc., 2012 WL 208107, at *1 (citing Butler, 250 F.3d at 179-80). "A putative intervenor does not have an interest not adequately represented by a party to a lawsuit simply because it has a motive to litigate that is different from the motive of an existing party." Natural Res. Def. Council, Inc. v. N.Y.S. Dep't of Envtl. Conservation, 834 F.2d 60, 61-62 (2d Cir. 1987).

"'Determination of the adequacy of existing representation necessarily involves an assessment of factors which are within the discretion of the district court.'" Drum Major Music Entm't Inc., 2012 WL 208107, at *1 (quoting U. S. Postal Serv. v. Brennan, 579 F.2d 188, 191 (2d Cir. 1978)). "So long as the party has demonstrated sufficient motivation to litigate vigorously and to present all colorable contentions, a district judge does not exceed the bounds of

6

discretion by concluding that the interests of the intervenor are adequately represented." Natural Res. Def. Council, Inc., 834 F.2d at 62.

Here, Battenkill and Assured both have an interest in the waterfall provisions being interpreted in such a fashion as to maximize Assured's recovery. They thus share an identity of interest as to the goal of this litigation – a declaration that the waterfall provisions of the Trust provide Assured with an independent reimbursement right, beyond mere subrogation. (Compare Assured Answer (Dkt. No. 27) at 35 (requesting "[a] declaration that Assured's right to reimbursement under the MARM 2007-3 PSA is for reimbursement of all claims paid and is not limited to those rights it would have as subrogee of the Insured Certificates"), with Proposed Battenkill Answer (Dkt. No. 51-1) at 22 (requesting judgment "ordering Wells Fargo to interpret the MARM 2007-3 PSA consistent with its historic practice of providing Assured with full reimbursement for claims paid")) Under these circumstances, a presumption exists that Assured will adequately represent Battenkill's interests in this litigation, and Battenkill bears the burden of rebutting that presumption. See Drum Major Music Entm't Inc., 2012 WL 208107, at *1.

Battenkill offers two arguments as to why Assured may not adequately represent its interests. First, Battenkill contends that because it "holds an 85% stake [in the disputed funds], by virtue of the Reinsurance Agreement . . . Assured has a dramatically smaller interest in the outcome[,] and thus Battenkill must intervene in the action now in order to fully safeguard its rights." (Battenkill Br. (Dkt. No. 50) at 12) Second, Battenkill claims that "in the event that Wales'[s] proposed interpretation of the PSA prevails, the interests of Battenkill and Assured may diverge to the extent Assured is ordered to repay other funds previously received since 2007, insofar as [Assured and Battenkill] may have differing views of their respective liability for such payments." (Id. at 13) More specifically, Battenkill maintains that it "would not be

7

liable under the Reinsurance Agreement for the clawback of any payments previously received by Assured prior to the execution of the Reinsurance Agreement." (Id. at 10 n.4) It appears that Assured disagrees with this interpretation of the Reinsurance Agreement. (Id.)

Battenkill's arguments concerning adequate representation are not persuasive. The fact that Battenkill has an 85% interest in the disputed trust proceeds does not make it any less likely that Assured will vigorously pursue an interpretation of the waterfall provisions that maximizes the distribution of Trust proceeds to Assured. Assured's interest in this litigation is to ensure that its interpretation of the waterfall provisions prevails, because, if so, Assured will receive greater disbursements from the Trust. Battenkill's interest in this litigation is identical to Assured's interest, because the greater the amount of the Trust disbursements that Assured receives, the greater will be the amount Battenkill recovers. Even assuming that Assured will only retain 15% of these proceeds – and that the remaining 85% will be distributed to Battenkill – Assured's financial stake is still substantial. Over a two and a half year period – in which its interpretation of the waterfall provisions was applied – Assured received distributions of approximately $47.7 million. (Wales Answer (Dkt. No. 25) ¶¶ 104, 108, 135-39)

Under similar circumstances, the court in Mitchell, 2009 WL 585882, denied intervention as of right and permissive intervention. Mitchell involves a 1981 contract between certain members of the Bay City Rollers – a rock band – and their record label. Id. at *1. The plaintiff band members claimed that defendant breached the 1981 contract by failing to pay royalties. Id. The putative intervenors were other members of the band who had not been parties to the 1981 contract. Id. at *1-2, *3. The intervenors alleged, however, that in several oral and/or implied agreements prior to the 1981 contract, they and the plaintiffs had agreed that all income generated from their participation in the band would be allocated pro rata among the

8

band members. Id. at *2. The putative intervenors contended that their "interest in the royalties that [were] the subject of [p]laintiffs' action . . . justifie[d] their intervention." Id. at *3.

The court denied the motion to intervene. Id. at *5-6. As to the adequacy of representation issue, the court found that

> Movants and Plaintiffs share[d] the same goal in the action before the Court: the full or largest possible recovery of royalties from [the record label], pursuant to its agreement with the Rollers. Movants' alleged claim to a share of the royalties [would] arise[ ] only after Plaintiffs recover[ed] from [the record label], and the Court f[ound] no persuasive evidence, or any at all, that the Rollers [would] not pursue their contractual claim vigorously, and toward maximum recovery of royalties allegedly due.

Id. at *5. Here, Battenkill and Assured likewise share the "same goal" in this action – an interpretation of the waterfall provisions of the Trust that will result in the largest distribution of proceeds to Assured.

That Battenkill might be liable – under the Reinsurance Agreement – for 85% of the losses suffered by Assured does not demonstrate that Assured is unlikely to vigorously litigate this case. If Wales's interpretation of the waterfall provisions prevails, Assured's losses are likely to increase. That Battenkill's reinsurance payments will likewise increase – as a result of Assured's increased losses – does not change the fact that Assured – which remains responsible for a significant percentage of its losses under the Reinsurance Agreement – will suffer increased losses as well. Moreover, Assured has a compelling interest in defeating Wales' interpretation of the waterfall provisions, given that Wales seeks to recover not only the amounts held in escrow, but also $47.7 million in Trust proceeds that have already been distributed to Assured. Assured's interest is all the more compelling if – as Battenkill contends – Battenkill has no liability for Trust proceeds disbursed to Assured prior to the effective date of the Reinsurance Agreement. (Reinsurance Agreement (Dkt. No. 51-2) at 1) In sum, Battenkill, "has made no showing, as it must do under Rule 24(a)(2), that [Assured] will not pursue its

9

[arguments about the waterfall provisions] 'vigorously.' Indeed, [Battenkill's] provisional answer to the [interpleader] complaint raises [arguments] no different than [Assured's] answer." Am. Lung Ass'n v. Reilly, 141 F.R.D. 19, 22 (E.D.N.Y. 1992), aff'd, 962 F.2d 258 (2d Cir. 1992) (internal citation omitted).

That a dispute may later arise between Assured and Battenkill regarding liability for past disbursements of Trust proceeds to Assured does not provide a basis for intervention. As discussed above, there is every reason to believe that Assured will adequately represent Battenkill's interests with respect to the key issue in this lawsuit – the proper interpretation of the waterfall provisions of the PSA. Moreover, it is Assured – and not Battenkill – that is a party to the guaranty for the MARM 2007-3 Trust, and the disputed Trust proceeds that have been distributed so far were distributed to Assured. Accordingly, any judgment requiring that previous disbursements be repaid to the Trust will necessarily be against Assured. If Assured is held liable for prior disbursements, and Assured and Battenkill disagree as to Battenkill's obligation to indemnify Assured for this liability, Assured's claim against Battenkill will be the subject of a separate action. Battenkill's interests would not be impaired by virtue of it not having been a party to this litigation, however, because interpretation of the Reinsurance Agreement – the contract that governs its responsibilities to Assured – is not at issue in this action. Interpretation of the Reinsurance Agreement – a contract entirely distinct from the series of complex instruments that govern the Trust – would unnecessarily complicate this litigation and introduce issues that are immaterial to interpretation of the waterfall provisions. In short, Battenkill's obligations, rights, and liabilities under the Reinsurance Agreement do not provide a basis for intervention as of right here; instead, these matters are more appropriately addressed in a separate proceeding. See Compagnie Noga D'Imp. Et D'Exp. S.A. v. Russian Fed'n, No. 00

Civ. 0632 (WHP), 2005 WL 1690537, at *2, *5 (S.D.N.Y. July 20, 2005) (denying intervention where putative intervenor's claimed interest resulted from a contract with an existing party to the litigation – which was not the contract at issue in the litigation – and the existing party would further its and the intervenor's mutual interest in maximizing the existing party's recovery, even though the existing party and putative intervenor would be left to "wrangle later over the proper division of any recovered monies" under the terms of their contract).

Battenkill's motion to intervene as of right will be denied.

## II. PERMISSIVE INTERVENTION

### A. Legal Standard

Battenkill argues, in the alternative, that permissive intervention is appropriate under Fed. R. Civ. P. 24(b). "The Federal Rules provide for permissive intervention upon timely application . . . 'when an applicant's claim or defense and the main action have a question of law or fact in common.'" City of New York, 198 F.3d at 367 (quoting Fed. R. Civ. P. 24(b)). "Whether to allow intervention is within the Court's discretion." Mitchell, 2009 WL 585882, at *5. "In making its determination, the Court considers the same factors it considers for intervention as of right, as well as (1) whether the potential intervenors will benefit from intervention; (2) whether the potential intervenors will contribute to the development of the underlying factual issues in the action; and (3) whether intervention will unduly delay or prejudice the adjudication of existing parties' rights." Gulino, 2009 WL 2972997, at *4.

### B. Analysis

Battenkill's motion for permissive intervention will also be denied. Given this Court's finding that Assured "will adequately represent [Battenkill] in the action[,] . . . [it] will not necessarily benefit from intervention." Id. at *4. Moreover, although Battenkill asserts that

11

it has "a perspective that may be uniquely helpful to these proceedings" – because of UBS's role in drafting the PSA (Battenkill Reply Br. (Dkt. No. 52) at 1, 6-7) – the arguments that Battenkill wishes to make regarding interpretation of the waterfall provisions are already being advanced by Assured. (Compare Assured Answer (Dkt. No. 27) ¶¶ 28-35, 38, with Proposed Battenkill Answer (Dkt. No. 51-1) ¶¶ 24-32; Assured Answer (Dkt. No. 27) ¶¶ 22-25, with Proposed Battenkill Answer (Dkt. No. 51-1) ¶¶ 33-37; Assured Answer (Dkt. No. 27) ¶¶ 17-22, with Proposed Battenkill Answer (Dkt. No. 51-1) ¶¶ 21-23) Battenkill has not explained what "unique" factual arguments it would offer that would be "helpful in these proceedings." (Battenkill Reply Br. (Dkt. No. 52) at 1, 6-7) To the contrary, Battenkill's "presence might unduly delay or prejudice the rights of the original parties in this case, where a speedy adjudication is required, because it would duplicate representation," Am. Lung Ass'n, 141 F.R.D. at 23, without providing any corresponding benefit to the proper adjudication of this dispute.[2] Given Battenkill's representation that it may seek a ruling concerning its potential liability for past Trust disbursements to Assured, "[t]he potential for delay and the complication engendered by the injection of such issues justify denial of the motion." Washington Elec. Coop., Inc. v. Mass. Mun. Wholesale Elec. Co., 922 F.2d 92, 98 (2d Cir. 1990). Accordingly, Battenkill's motion for permissive intervention will be denied.[3]

---

[2] Battenkill argues that no "necessity for 'speedy adjudication'" exists here that would warrant denial of its motion to intervene. (Battenkill Reply Br. (Dkt. No. 52) at 5 n.3) Wells Fargo has been holding the disputed funds in escrow for approximately a year, however. Moreover, according to Wales, within the first two months of this litigation, $3 million had accumulated in the escrow account. (See Wales Answer (Dkt. No. 25) at 31) Given that at least one party to this litigation is being deprived of substantial monies it is entitled to under the Trust's instruments, there is a need for speedy adjudication.

[3] Battenkill argues that the fact that this is an interpleader action makes its intervention particularly appropriate. (Battenkill Br. (Dkt. No. 50) at 15; Battenkill Reply Br. (Dkt. No. 52) at 3) This argument is not persuasive. Battenkill is not one of "a number of persons possess[ing] claims to a fund which are or may be mutually exclusive." Salomon Smith Barney, Inc. v.

## CONCLUSION

For the reasons stated above, Battenkill's motion to intervene is denied. The Clerk of the Court is directed to terminate the motion (Dkt. No. 49).[4]

Dated: New York, New York
September 18, 2014

SO ORDERED.

*Paul Gardephe*
Paul G. Gardephe
United States District Judge

---

McDonnell, No. 01 Civ. 2874 (RO), 2001 WL 1020460, at *23 (S.D.N.Y. Sept. 5, 2001) (quoting Cascade Natural Gas Corp. v. El Paso Natural Gas Co., 386 U.S. 129, 146 (1967). Instead, it is Assured that claims a competing interest in the disputed funds; Battenkill's claim only relates to a percentage of the funds that Assured ultimately recovers. Battenkill and Assured are thus not competing claimants presenting mutually-exclusive claims to a single fund. Given that Assured will adequately represent Battenkill's interests here, Battenkill's rights will not be impaired by its absence from this litigation.

[4] Given this Court's conclusion that any interest Battenkill might have in this litigation will be adequately represented by Assured, it need not address Wales's arguments that Battenkill has (1) not alleged a sufficiently direct interest in the subject matter of the litigation to warrant intervention as of right; and (2) not demonstrated that disposition of this matter will affect its ability to protect that interest. See City of New York, 198 F.3d at 364.

13